**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------x
                                              :
In re                                         :         Chapter 11
                                              :
**NICHOLAS G. A. DENTON,**                    :         Case No. 16-12239 (SMB)
                                              :
                    **Debtor.**               :
                                              :
-------------------------------------------------------x

### DECLARATION OF NICHOLAS G. A. DENTON
### PURSUANT TO LOCAL BANKRUPTCY RULE 1007-2

Nicholas G. A. Denton, hereby declares, pursuant to 28 U.S.C. § 1746, as follows:

1. I am the debtor herein, and I submit this declaration pursuant to Rule 1007-2 of the Local Rules for the United States Bankruptcy Court for the Southern District of New York.

### Local Rule 1007-2(a)(1)

- *The nature of the debtor's business and a concise statement of the circumstances leading to the debtor's filing under chapter 11*

2. I am the founder and Chief Executive Officer of Gawker Media Group, Inc. ("**GMGI**") and Gawker Media, LLC ("**Gawker Media**"). GMGI is the parent company of Gawker Media and Kinja, Kft., a Hungarian corporation ("**Kinja**" and, together with Gawker Media and GMGI, the "**Company**"). The Company is a privately-held online media company.

3. Gawker Media operates seven distinct media brands with corresponding websites under the names *Gawker*, *Deadspin*, *Lifehacker*, *Gizmodo*, *Kotaku*, *Jalopnik*, and *Jezebel* (the "**Websites**"), all pursuant to intellectual property owned by and licensed from Kinja. The Company's various Websites cover, among other things, news and commentary on current events, politics, pop culture, sports, cars, fashion, productivity, technology and video games. The Websites have a collective global readership of over 90 million readers (approximately 50 million in the United States), generally in the age range of 18 to 34 years old.

4.      As CEO of Gawker Media, I am responsible for, among other things, developing, communicating, and implementing the company's go-forward business strategy and vision, soliciting guidance and advice from the board of directors, and managing the operations and resources of the company.  Since 2002, Gawker Media has experienced continuous growth.  It earned approximately $6,000 per month at the end of its second year, and having weathered the recession of 2008-2009, it generated over $4,000,000 in revenue per month in 2015.  Between 2012 and 2015, Gawker Media experienced a compound annual growth rate of approximately 24%, with revenue in 2015 of approximately $49.9 million.

5.      Despite its long-running success and growth trajectory, on June 10, 2016, Gawker Media, and on June 12, 2016, GMGI and Kinja were each forced to commence chapter 11 proceedings in this Court as a result of a $130 million judgment issued against Gawker Media in the action entitled, *Bollea v. Gawker Media, LLC, et al.*, No. 12012447-CI-011 (Fla. 6th Jud. Cir. Pinellas Cty.) (the "**Bollea Litigation**").  I am a defendant in the Bollea Litigation and was held to be jointly and severally liable with Gawker Media with respect to $115 million of the Bollea Judgment (as defined below) and separately liable with respect to an additional $10 million in punitive damages of the Bollea Judgment.

6.      The Bollea Litigation arises out of a publication on Gawker.com of an article (the "**Hogan Story**") commenting on a video depicting plaintiff Terry Gene Bollea, the professional wrestler and entertainer known as "Hulk Hogan," having sexual relations with Heather Clem, the wife of his then-best friend, radio disk jockey Bubba Clem, along with brief and highly edited excerpts from the Video (the "**Excerpts**").  Bollea initially challenged the publication of both the Hogan Story and the Excerpts, but later narrowed his claims to focus only on the Excerpts.

-2-

7. Notably, although Mr. Bollea is the named plaintiff, the driving force behind the Bollea Litigation is Peter Thiel, a billionaire investor, who holds a personal vendetta against the Company and has publicly admitted that he funded the Bollea Litigation and other lawsuits against me and Gawker Media (as the *New York Times* reports) to "to try to put the media company out of business."

8. Bollea's claims consist of causes of action for, among other things, invasion of privacy, right of publicity, intrusion upon seclusion, intentional infliction of emotional distress, and violations of Florida's Security of Communications Act. He initially sued a number of defendants, but only three defendants were left at the time of trial: me, Gawker Media, and A.J. Daulerio (the former editor-in-chief of Gawker.com and author of the Hogan Story) (the "**Bollea Litigation Defendants**").

9. Bollea initially sued in federal court. He tried on several occasions to obtain preliminary injunctive relief to have the video removed, but the federal judge (Hon. James Whittemore) denied each of the motions, finding that the Hogan Story and Excerpts were protected by the First Amendment. *See, e.g.*, *Bollea v. Gawker Media, LLC*, No. 8:12-cv-02348-T-27TBM, 2012 WL 5509624 (M.D. Fla. Nov. 14, 2012); *Bollea v. Gawker Media, LLC*, 913 F. Supp. 2d 1325 (M.D. Fla. 2012). Thereafter, Bollea dismissed his federal action and re-filed his claims in state court. The state court entered a temporary injunction, which was then stayed and reversed by Florida's Second District Court of Appeal. *See Gawker Media, LLC v. Bollea*, 129 So. 3d 1196 (Fla. 2d DCA 2014). The appeals court unanimously reversed the injunction on the basis that the Hogan Story and Excerpts addressed a matter of public concern and that a temporary injunction could not issue under the First Amendment. *Id.* at 1200-02.

10. The trial proceeded in March 2016. A jury found in favor of Bollea on all counts and awarded him a total aggregate of $140.1 million, comprised of $115 million in compensatory damages recoverable from all three defendants jointly and severally, as well as punitive damages in the amount of $15 million against Gawker Media, $10 million against me, and $100,000 against Daulerio. On June 7, 2016, the Florida court entered final judgment with respect to the jury's award (the "**Bollea Judgment**").

11. The Bollea Litigation Defendants have filed a notice of appeal from the Bollea Judgment (the "**Appeal**"). Based on the prior appellate court findings as well as the opinion of counsel, the Company and I feel strongly that the Bollea Judgment will be overturned.

12. On June 9, 2016, the Bollea Litigation Defendants filed a motion in the Florida trial court for a stay of execution pending appeal. At a hearing on June 10, 2016, the Florida trial court orally granted that motion subject to further proceedings.

13. The trial court denied the stay motion as to Gawker Media, however. As a result, on June 10, 2016 (the "**Gawker Media Petition Date**"), Gawker Media commenced emergent chapter 11 proceedings in this Court. GMGI and Kinja filed their cases a couple days later. The Company entered bankruptcy with a stalking horse asset purchase agreement for approximately $90 million, subject to higher and better offers.

14. On the Gawker Media Petition Date, Gawker Media filed a complaint in this Court against Meanith Huon, Ashley Terrill, Teresa Thomas, Shiva Ayyadurai, Terry Gene Bollea, Charles C. Johnson, and Got News LLC pursuant to Section 105(a) of the Bankruptcy Code together with a motion (the "**Preliminary Injunction Motion**") seeking, among other relief, a preliminary injunction enjoining Bollea from enforcing the Bollea Judgment against me pending the termination of the automatic stay in Gawker Media's bankruptcy case. On June 10,

2015, this Court entered a temporary restraining order [Adv. Pro. No. 16-01085, Docket No. 3] (the "**TRO**"), restraining and enjoining Bollea from taking steps to execute or to enforce the Bollea Judgment pending the Court's hearing and ruling on Gawker Media's preliminary injunction motion.

15. On July 19, 2016, this Court held an evidentiary hearing with respect to the Preliminary Injunction Motion, and on July 25, 2016, the Court entered an Order denying the relief requested as to the Bollea Litigation and vacating the TRO [Adv. Pro. No. 16-01085, Docket No. 52]. A.J. Daulerio and I immediately filed a motion with the Florida appeals court seeking a stay of execution of the Bollea Judgment pending the Appeal. Bollea opposed that motion and filed his own motion in the Florida trial court requesting that its June 10th oral ruling be vacated. Bollea contended, among other things, that Daulerio and I had misrepresented the value of our shares in GMGI in our initial motion for a stay pending appeal (in which we offered to pledge our equity in GMGI as security). Daulerio and I opposed the motion to vacate, explaining why Bollea's arguments were wrong.

16. On July 27, 2016, the Florida appellate court granted our motion for a provisional stay to the extent of providing a thirty-day stay of execution, pending the trial court's ruling and order with respect the stay motions pending before it. On July 29, 2016, the trial court entered an order denying a stay and finding that Bollea could begin executing on the Bollea Judgment immediately, unless Daulerio and I posted a bond in the full amount of the judgment plus two years' interest. Thereafter, Daulerio and I filed a motion with the Florida appellate court seeking a provisional stay of the trial court's order to allow us to file a motion challenging the merits of the trial court's order denying our motion for a stay. Unfortunately, today, the appeals court

-5-

denied our request, effectively allowing Bollea to begin executing on the Bollea Judgment immediately.

17. With no protection from the execution of the Bollea Judgment, I was forced to file this chapter 11 case to protect and preserve my assets, including my substantial equity interests in GMGI, for the benefit of all my creditors pending resolution of the Appeal. It is my and Gawker Media's stated intention to fully prosecute the Appeal in the Florida state courts as expeditiously as possible.

18. Pending Appeal, and without the protections of a 105 injunction or a stay pending Appeal, there is nothing to prevent Bollea – a single creditor who is backed by a billionaire investor who has publicly declared his personal vendetta against me and the Company – from immediately seeking to execute on the Bollea Judgment and to seize my assets. Since my primary asset is my stock in GMGI, Bollea would become a substantial owner of GMGI. Not only would such a result be unfair to me and my creditors given that the Bollea Judgment is subject to appeal and significant dispute, but it could also forestall the Company's reorganization efforts to the detriment of the Company and all its creditors and constituencies.

### **Local Rule 1007-2(a)(2)**

- *If the case originally was commenced under chapter 7 or chapter 13, the name and address of any trustee appointed in the case and, in a case originally commenced under chapter 7, the names and addresses of the members of any creditors' committee*

19. This case was not originally commenced under Chapter 7 or 13 of the Bankruptcy Code.

### **Local Rule 1007-2(a)(3)**

- *The names and addresses of the members of, and attorneys for, any committee organized prior to the order for relief in the chapter 11 case.*

20. No committee was organized prior to the order for relief in this case.

-6-

**Local Rule 1007-2(a)(4)**

- *The following information with respect to each of the holders of the twenty (20) largest unsecured claims, excluding insiders: the name, the address (including the number, street, apartment or suite number, and zip code, if not included in the post office address), the telephone number, the name(s) of person(s) familiar with the debtor's account, the amount of the claim, and an indication of whether the claim is contingent, unliquidated, disputed, or partially secured.*

21.     A list of the names and addresses of my twenty (20) largest unsecured creditors, excluding those who would not be entitled to vote at a creditors' meeting and creditors who are "insiders" as that term is defined in Section 101(31) of the Bankruptcy Code, is being filed contemporaneously with this Declaration.

**Local Rule 1007-2(a)(5)**

- *The following information with respect to each of the holders of the five (5) largest secured claims: the name, the address (including the number, street, apartment or suite number, and zip code, if not included in the post office address), the amount of the claim, a brief description and an estimate of the value of the collateral securing the claim, and whether the claim or lien is disputed.*

22.     As of the date hereof, JP Morgan Chase Bank, N.A., headquartered at 270 Park Avenue, New York, NY 10017, holds a secured claim in the approximate amount of $1,732,753.46 based on a note and mortgage against my principal residence located at 76 Crosby Street, New York, New York 10012. The apartment is worth approximately $4,250,000 based on an appraisal taken in December 2015. Aside from the mortgage on my apartment, I have no other secured debt.

**Local Rule 1007-2(a)(6)**

- *Summary of the debtor's assets and liabilities.*

23.     In addition to my condominium in New York City, my principal asset is my ownership interest GMGI. I own 45,024060 shares and options (or 29.52%) of GMGI. GMGI is a Cayman Island company whose sole assets are 100% of the equity interests in Gawker Media

and Kinja. I also have funds in a retirement account, a brokerage account, and personal banking accounts (some of which I own with my husband).

24. My principal debt is the Bollea Judgment. I also have miscellaneous personal liabilities, including a loan from GMGI, a loan from my father, a loan against my 401k account, miscellaneous credit card debt, and ordinary household obligations. In addition, I guaranteed certain secured indebtedness of Gawker Media for which I am contingently liable. Further, I have significant unsecured, unliquidated, and contingent liability in connection with several pending lawsuits in which I am named a co-defendant. The nature and status of those proceedings and the claim amounts at issue are discussed below.

### Local Rule 1007-2(a)(7)

- *The number and classes of shares of stock, debentures, or other securities of the debtor that are publicly held.*

25. I am an individual and, therefore, Local Rule 1007-2(a)(7) is not applicable.

### Local Rule 1007-2(a)(8)

- *A list of all of the debtor's property in the possession or custody of any custodian, public officer, mortgagee, pledgee, assignee of rents, or secured creditor, or agent for any such entity, giving the name, address, and telephone number of each such entity and the court in which any proceeding relating thereto is pending.*

26. I do not have property in the possession or custody of any custodian, public officer, mortgage, pledgee, assignee of rents, or secured creditor, or agent for any such entity.

### Local Rule 1007-2(a)(9)

- *A list of the premises owned, leased, or held under other arrangement from which the debtor operates its business.*

27. I do not have any premises owned, leased, or held under other arrangement from which I conduct my affairs.

### Local Rule 1007-2(a)(10)

- *The location of the debtor's substantial assets, the location of its books and records, and the nature, location, and value of any assets held by the debtor outside the territorial limits of the United States.*

28.    As I stated above, my most valuable asset is my stock in GMGI. My substantial assets and books and records are located at my residence at 76 Crosby Street, New York, NY 10012. I do not have any assets outside the territorial limits of the United States.

**Local Rule 1007-2(a)(11)**

- *The nature and present status of each action or proceeding, pending or threatened, against the debtor or its property where a judgment against the debtor or a seizure of its property may be imminent.*

29.    Aside from the Bollea Litigation, I am a defendant in three other pending lawsuits. Each action arises from claims for defamation or related torts based on articles written for and published by a Gawker Media website. A summary of the nature and present status of each action is as follows:

- ***Huon v. Denton, et al.*, No. 11-cv-03054 (N.D. Ill.) and on appeal No. 15-3049 (7th Cir.).** Gawker Media, Darbyshire, Irin Carmon, and I are defendants in this suit, which asserts causes of action for defamation and related torts arising from an article published by Gawker and from comments posted on Gawker's website. The article at issue reported on plaintiff's filing of a lawsuit against another publisher, Above the Law, over its report about an Illinois criminal proceeding in which Huon was charged with rape and acquitted by a jury. The trial court dismissed the case against each Gawker defendant (including the individuals). Huon appealed the decision and the U.S. Court of Appeals for the Seventh Circuit heard argument on May 31, 2016. Huon is seeking at least $100,000,000 in damages. On July 27, 2016, this Court entered an Order modifying the automatic stay in effect as a result of Gawker Media's bankruptcy filing for the sole purpose of permitting the Seventh Circuit to render a decision on the pending appeal and enter any order in connection with that decision.

- ***Ashley Terrill v. Gawker Media, LLC, et al.,* No. 16-CV-00411 (S.D.N.Y.).** Gawker Media, Sam Biddle, John Cook, and I are defendants in this suit for defamation, breach of confidence, intentional interference with prospective economic advantage, fraudulent misrepresentation, and negligent hiring and retention. The suit arises from an article regarding plaintiff's investigation into a former executive for the dating application Tinder, and plaintiff's belief that she was being harassed for undertaking the investigation. The Terrill litigation is currently pending in the Southern District of New York, and the plaintiff is represented by Peter Thiel's counsel. The action has been automatically stayed as to Gawker Media pursuant to 11 U.S.C. § 362. On June

13, 2016, at the individual defendants' request, the court extended their time to respond to the plaintiff's second amended complaint until two weeks after this Court rules on the Preliminary Injunction Motion. On July 19, 2016, this Court held a hearing with respect to the Preliminary Injunction Motion and granted the part of the motion requesting a stay of the Terrill litigation as to the individual defendants. An Order memorializing this Court's ruling has not been entered yet. Plaintiff is seeking at least $10,000,000 in damages.

- *Ayyadurai v. Gawker Media, LLC, et al.*, **No. 16-CV-10853 (D. Mass.).** Gawker Media, Sam Biddle, John Cook, and I are defendants in this suit for libel, intentional interference with prospective economic advantage, intentional infliction of emotional distress, and negligent hiring and retention. The suit arises from publication of three articles regarding the plaintiff's claims to have invented e-mail. The complaint was filed in the District of Massachusetts, and the plaintiff is represented by Peter Thiel's counsel. The action has been automatically stayed as to Gawker Media pursuant to 11 U.S.C. § 362. On June 30, 2016, the individual defendants filed a motion in the Massachusetts court requesting an extension of time to respond to the complaint until two weeks after this Court rules on the Preliminary Injunction Motion, which the court has not ruled on yet. On July 19, 2016, this Court held a hearing with respect to the Preliminary Injunction Motion and granted the part of the motion requesting a stay of the Ayyadurai litigation as to the individual defendants. An Order memorializing this Court's ruling has not been entered yet. The plaintiff is seeking at least $35,000,000 in damages.

## Local Rule 1007-2(a)(12)

- *The names of the individuals who comprise the debtor's existing senior management, their tenure with the debtor, and a brief summary of their relevant responsibilities and experience.*

30.     I am an individual and, therefore, Local Rule 1007-2(a)(12) is not applicable.

Pursuant to 28 U.S.C. § 1746, I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge, information, and belief.

By: _____
Nicholas G. A. Denton

Executed On: August 1, 2016