## **EXHIBIT A**

**Non-Compete Agreement**

## NON-COMPETITION and NON-SOLICITATION AGREEMENT

This Non-Competition and Non-Solicitation Agreement (the "Agreement") is made and entered into as of August 17, 2016, by and between UniModa LLC, a Delaware limited liability company ("Buyer"), and Nick Denton ("Stockholder").

## RECITALS

WHEREAS, Stockholder is an equity holder of Gawker Media Group, Inc., a Cayman Island exempted company ("Holdco");

WHEREAS, pursuant to, and subject to the terms and conditions of, the Asset Purchase Agreement (the "Purchase Agreement", it being understood that capitalized terms used but not defined herein shall have the meanings assigned to them in such Purchase Agreement), dated as of the date hereof by and among Holdco, Gawker Media, LLC, a Delaware limited liability corporation ("GM LLC"), Kinja Kft., a Hungarian corporation ("Kinja" and together with Holdco and GM LLC, "Sellers")), and Buyer, Buyer will acquire the Acquired Assets; and

WHEREAS, in connection with finalizing the terms of the Purchase Agreement and subsequent to the time that the Sellers had committed substantial effort and expense towards achieving the transactions described in the Asset Purchase Agreement, Buyer requested that Stockholder agree to certain restrictive covenants, in each case, on the terms set out herein, which agreement by Stockholder constitutes a material inducement to Buyer to acquire the Acquired Assets and consummate the other transactions contemplated by the Purchase Agreement, and in consideration of the remuneration to be paid hereunder, Stockholder is entering into this Agreement.

NOW, THEREFORE, in consideration of the foregoing and the mutual agreements hereinafter set forth, the parties hereto agree as follows:

## AGREEMENT

**1.     Compensation; Status**

**1.1.**    For a period beginning on the Closing Date and ending on the date that is twenty-four (24) months thereafter, unless otherwise mutually agreed in writing between the parties hereto (the applicable period being referred to herein as the "Restricted Period"). During the Restricted Period, Stockholder shall receive monthly fees in the amount of sixteen thousand six hundred and sixty six dollars ($16,666) in consideration for the Stockholder's continued compliance with Sections 2.1 and 2.2 below.  Notwithstanding anything herein to the contrary, this Agreement shall terminate immediately upon termination of the Purchase Agreement in accordance with its terms and without any of the transactions thereunder being consummated.

**1.2.**    Stockholder shall not be an employee of Buyer or any of its Affiliates or otherwise render services to Buyer, Buyer may not, at any time, act as a representative for or

on behalf of Buyer for any purpose or transaction, and may not bind or otherwise obligate Buyer in any manner whatsoever, and the payments of the above-referenced compensation shall not be subject to withholding. Stockholder agrees that during the Restricted Period, Stockholder shall not be eligible to participate in any of the employee benefit plans or arrangements of Buyer or any of its Affiliates.

### 2.      Non-Competition and Non-Solicitation Covenants

**2.1.**     Stockholder covenants and agrees that from the date hereof and continuing through the end of the Restricted Period, Stockholder will not directly or indirectly (without the prior written consent of Buyer) associate (including as a director, officer, employee, partner, consultant, agent or advisor) with any business enterprise that engages in the Business in the United States, Puerto Rico or Hungary. Notwithstanding the foregoing, this Section 2.1 shall not apply to any business activities 

**2.2.**     Stockholder covenants and agrees that from the date hereof and continuing through the end of the Restricted Period, Stockholder shall not, and shall not permit its Affiliates to, directly or indirectly, hire or solicit any employee or contractor of Buyer (a "Non-Solicitation Employee"), or encourage any Non-Solicitation Employee to terminate his or her employment or relationship with Buyer, any Seller or any of their respective Subsidiaries, in each case without the prior written consent of Buyer; provided, that none of the following shall be deemed a violation hereof: (i) general employment advertising or a general offer of employment to the public, in each case, carried on or made in good faith that is not targeted at any Non-Solicitation Employee and the hiring of any such employee as a result thereof, (ii) the use of a search firm or employment agency that is not targeted at any Non-Solicitation Employee and the hiring of any such employee as a result of such use or (iii) the employment of any Non- Solicitation Employee who, at such time, has not been for a period of at least six (6) months an employee of Buyer, the Company or any of their respective Subsidiaries and with respect to whom Stockholder is not otherwise in breach of this Section 2.2. Notwithstanding the foregoing, at any time, Stockholder and Buyer may mutually agree to allow Stockholder to solicit for employment or employ any Non-Solicitation Employee.

**2.3.**     Stockholder acknowledges that a breach or threatened breach by Stockholder of any of the covenants set forth in Sections 2.1 and 2.2 cannot be reasonably or adequately

compensated in damages in an action at Law, and that Buyer will be entitled to, among other remedies and without posting any bond or other undertaking, such injunctive relief, which may include: (x) restraining Stockholder from engaging in any action that would constitute or cause a breach or violation of this Agreement, (y) obtaining specific performance to compel Stockholder to perform its obligations and covenants hereunder, and (z) obtaining damages available either at Law or in equity. Nothing herein contained shall be construed as prohibiting any party from pursuing any other remedy available to it for such breach or threatened breach. Stockholder shall not take any position inconsistent with the foregoing in any Proceeding.

       3.      **Entire Agreement.** This Agreement is the product of the parties hereto, and constitutes the complete agreement and understanding between such parties pertaining to the subject matter hereof and thereof. Any and all other written or oral agreements existing between the parties hereto regarding such transactions are expressly canceled. Any term of this Agreement may be amended or waived with the written consent of Stockholder and Buyer or their respective successors and assigns. Any amendment or waiver effected in accordance with this section shall be binding upon the parties and their respective successors and assigns.

       4.      **Successors and Assigns**. The terms and conditions of this Agreement shall inure to the benefit of and be binding upon the respective successors and assigns of Buyer or any of its Affiliates. Stockholder shall not assign this Agreement without the written consent of Buyer. Nothing in this Agreement, express or implied, is intended to confer upon any party other than the parties hereto or their respective successors and assigns any rights, remedies, obligations, or liabilities under or by reason of this Agreement, except as expressly provided in this Agreement.

       5.      **Governing Law.** This Agreement and all acts and transactions pursuant hereto and the rights and obligations of the parties hereto shall be governed, construed and interpreted in accordance with the laws of the State of New York, without giving effect to principles of conflicts of law.

       **6. Counterparts.** This Agreement may be executed in two or more counterparts, each of which shall be deemed an original and all of which together shall constitute one instrument.

[*Signature Page Follows*]

IN WITNESS WHEREOF, each of the parties hereto has caused this Agreement to be executed and delivered by its duly authorized officer as of the date first above written.

**"BUYER"**

**UNIMODA, LLC**

Name: _____

Title: _____

**"STOCKHOLDER"**

_____

Name: Nick Denton