**COLE SCHOTZ P.C.**
Ilana Volkov, Esq.
Mark Tsukerman, Esq.
1325 Avenue of the Americas, 19th Floor
New York, New York 10019
Telephone: (212) 752-8000
Facsimile: (212) 752-8393

*Proposed Counsel for Debtor and*
*Debtor-in-Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------x
: 
In re: : Chapter 11
: 
NICHOLAS G. A. DENTON, : Case No. 16-12239 (SMB)
: 
Debtor.[1] :
: 
---------------------------------------------------------x

**DEBTOR'S MOTION FOR ORDER AUTHORIZING THE DEBTOR TO REDACT AND FILE UNDER SEAL CERTAIN CONFIDENTIAL PORTIONS OF NON-COMPETITION AND NON-SOLICIATION AGREEMENT WITH UNIMODA LLC**

Nicholas Denton, the debtor and debtor-in-possession in the above-captioned chapter 11 case (the "**Debtor**"), by and through his undersigned proposed counsel, hereby files this motion (the "**Motion**") for entry of an order, substantially in the form attached hereto, pursuant to sections 105(a) and 107(b) of title 11 of the United States Code (the "**Bankruptcy Code**") and Rule 9018 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), authorizing the Debtor to redact and file under seal a certain provision of the Non-Compete Agreement (defined below), which the Debtor filed in redacted form as an exhibit to the *Debtor's Motion for Order Pursuant to Section 105(a) and 363 of the Bankruptcy Code Approving the Debtor's Entry Into Non-Competition and Non-Solicitation Agreement with*

---

[1] The last four digits of the Debtor's social security number are 1234.

*UniModa, LLC* (the "**Non-Compete Approval Motion**") filed contemporaneously herewith.[2] In support of the Motion, the Debtor respectfully represents as follows:

## JURISDICTION AND VENUE

1. The Court has jurisdiction to consider the Motion pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

2. The statutory bases for the relief requested herein are sections 105(a) and 107(b) of the Bankruptcy Code and Bankruptcy Rule 9018.

## BACKGROUND

3. The Debtor is an entrepreneur who founded Gawker Media Group, Inc. ("**GMGI**") and Gawker Media, LLC ("**Gawker Media**"), an online media company. GMGI is the parent company of Gawker Media and Kinja, Kft, a Hungarian corporation ("**Kinja**" and together with Gawker Media and GMGI, the "**Company**"). The Debtor owns approximately 30% of the equity of GMGI.

4. Under the Debtor's management and business strategy and vision, Gawker Media developed seven distinct media brands with corresponding websites. Since 2002, Gawker Media experienced continuous growth and success. It earned approximately $6,000 per month at the end of its second year, and having weathered the recession of 2008-2009, it generated over $4 million in revenue per month in 2015. Between 2012 and 2015, Gawker Media experienced a compound annual growth rate of approximately 24% with revenue in 2015 of approximately $49.9 million. Although the Company was forced to file for chapter 11 and commence sale

---

[2] Any capitalized terms used but not defined herein shall have the same meaning as in the Non-Compete Approval Motion.

proceedings as result of the Bollea Judgment, the Company is expected to be sold for approximately $135 million.[3]

## THE NON-COMPETE AGREEMENT AND THE CARVE-OUT

5.     In connection with UniModa's successful bid at the Auction, the Company and UniModa agreed upon the terms of a certain Asset Purchase Agreement dated as of August 17, 2016 (the "**UniModa APA**"), a copy of which is attached as Exhibit A to the *Notice of Filing of Asset Purchase Agreement Between the Debtors and the Successful Bidder for Sale of Substantially All of the Debtors' Assets*, Gawker Docket No. 192.

6.     An express condition to the closing on the UniModa APA is that the Company deliver a Non-Competition and Non-Solicitation Agreement (as defined in the UniModa APA) executed by the Debtor.  (*See* UniModa APA, § 7.1(f)).

7.     After good faith and arm's-length negotiations, the Debtor and UniModa agreed upon terms of the Non-Compete Agreement.  Among other material terms, as set forth in Sections 2.1 and 2.2 of the Non-Compete Agreement (the "**Restrictive Covenants**"), the Debtor has agreed not to directly or indirectly associate with any business enterprise that engages in the Business (as defined in the UniModa APA) in the United States, Puerto Rico or Hungary, without UniModa's prior written consent.  (*See* Non-Compete Agreement, § 2.1).

8.     As a material inducement for the Debtor to enter into the Non-Compete Agreement, UniModa agreed to carve-out certain potential or contemplated business ventures of the Debtor from the scope of the Restrictive Covenants (the "**Carve-Out**").  (*See* Non-Compete Agreement, § 2.1).  The description of the ventures is confidential and commercial information,

---

[3] At a hearing held on August 18, 2016, the Court approved the sale (the "**Sale**") of substantially all the Company's assets to UniModa, LLC ("**UniModa**"), the successful bidder at the Auction held on August 16, 2016. The Sale is anticipated to close on or about September 9, 2016.

as it reflects the Debtor's vision of a future business platform that he believes is viable and has great commercial potential. The Debtor is seriously concerned that, if the Carve-Out is publicized, others may seek to exploit the concept before the Debtor is able to, thereby causing him and his estate and creditors irreparable harm.

## RELIEF REQUESTED

9. By this Motion, the Debtor respectfully requests entry of an order, substantially in the form attached hereto, authorizing the Debtor to redact and file under seal the Carve-Out provision of the Non-Compete Agreement that was filed in connection with the Non-Compete Approval Motion (the "**Proposed Redaction**").

10. In accordance with the Court's Chambers' Rules on Sealing Orders, a redacted copy of the Non-Compete Agreement is attached hereto as **Exhibit A** and an unredacted copy is attached hereto as **Exhibit B** to be provided to the Court for *in camera* review, but not filed.

## BASIS FOR RELIEF

11. Section 107(b) of the Bankruptcy Code provides bankruptcy courts with the power to issue orders that will protect entities from potential harm that may result from the disclosure of certain information. In relevant part, section 107(b) provides:

> On request of a party in interest, the bankruptcy court shall, and on the bankruptcy court's own motion, the bankruptcy court may—
> (1) Protect an entity with respect to a trade secret or confidential research, development, or commercial information . . . .

11 U.S.C. § 107(b).

12. Pursuant to Bankruptcy Rule 9018, a party, with or without notice, may request that a document be sealed under section 107(b) of the Bankruptcy Code. Bankruptcy Rule 9018 provides, in pertinent part:

> On motion or on its own initiative, with or without notice, the court may make any order which justice requires . . . to protect the estate or any entity in respect of a trade secret or other confidential research, development, or commercial information . . . . If an order is entered under this rule without notice, any entity affected thereby may move to vacate or modify the order, and after a hearing on notice the court shall determine the motion.

Fed. R. Bankr. P. 9018.

13. Once a Court determines that the information sought to be protected falls within one of the categories enumerated in section 107(b) of the Bankruptcy Code, the court must grant the relief requested. *See Video Software Dealers Ass'n v. Orion Pictures Corp. (In re Orion Pictures Corp.)*, 21 F.3d 24, 27 (2d. Cir. 1994) ("the court is required to protect a requesting interested party and has no discretion to deny the application"). Commercial information need not rise to the level of a trade secret to be protected under section 107(b) of the Bankruptcy Code and an interested party only has to show that the information it wishes to seal is "confidential and commercial in nature." *Id.* at 27-28 (internal quotation marks omitted). Once it is established that the subject information qualifies as "commercial information" under section 107(b)(1), the Bankruptcy Code mandates that this information be protected from disclosure. *In re Global Crossing*, 295 B.R. 720, 725 (Bankr. S.D.N.Y. 2003) (holding that courts are "compelled to grant" sealing relief when the information at question "falls within the scope of [] *commercial information* . . . .") (emphasis in original).

14. In determining whether "commercial information" should be sealed, courts in this district look to Bankruptcy Rule 9018's purpose: to "protect business entities from disclosure of information that could reasonably be expected to cause the entity commercial injury." *See id*. Accordingly, "commercial information" includes information that, if disclosed, would provide an "unfair advantage to competitors by providing them information as to the

5

commercial operations of the debtor." *In re Dreier, LLP*, 485 B.R. 821, 822-23 (Bankr. S.D.N.Y. 2013) (quotation marks omitted).

15. Here, the Proposed Redaction falls squarely within the scope of the protections afforded by Bankruptcy Code § 107(b) and Bankruptcy Rule 9018. As discussed, the Carve-Out provision of the Non-Compete Agreement contains commercially sensitive and confidential information regarding the Debtor's vision for a future business platform that he believes has great commercial potential. Its publication may cause the Debtor commercial injury by giving his competitors an opportunity to exploit the concept before he is able to.

## NOTICE

16. In accordance with the Court's Chambers Rules, the relief sought by this Motion is being sought *ex parte*, without prejudice to the rights of any party in interest or the United States Trustee to seek to unseal the Proposed Redaction.

## NO PRIOR REQUEST

17. No previous request for the relief sought herein has been made to this or any other court.

## **CONCLUSION**

WHEREFORE, for all the foregoing reasons, the Debtor respectfully requests that the Court enter an order, substantially in the form attached hereto, granting the relief requested in the Motion and such other relief as the Court deems just and proper under the circumstances.

Dated: New York, New York
August 19, 2016

COLE SCHOTZ P.C.

/s/  Ilana Volkov
Ilana Volkov
Mark Tsukerman
1325 Avenue of the Americas, 19th Floor
New York, New York 10019
Telephone: (212) 752-8000
Facsimile: (212) 752-8393

– and –

Warren A. Usatine (admitted *pro hac vice*)
Court Plaza North
25 Main Street
P.O. Box 800
Hackensack, New Jersey  07602-0800
Telephone: (201) 489-3000
Facsimile: (201) 489-1536

*Proposed Counsel for Debtor and Debtor-in-Possession*

7

# EXHIBIT A

**Redacted Copy of Non-Compete Agreement**

55451/0001-13490259

## NON-COMPETITION and NON-SOLICITATION AGREEMENT

This Non-Competition and Non-Solicitation Agreement (the "Agreement") is made and entered into as of August 17, 2016, by and between UniModa LLC, a Delaware limited liability company ("Buyer"), and Nick Denton ("Stockholder").

### RECITALS

WHEREAS, Stockholder is an equity holder of Gawker Media Group, Inc., a Cayman Island exempted company ("Holdco");

WHEREAS, pursuant to, and subject to the terms and conditions of, the Asset Purchase Agreement (the "Purchase Agreement", it being understood that capitalized terms used but not defined herein shall have the meanings assigned to them in such Purchase Agreement), dated as of the date hereof by and among Holdco, Gawker Media, LLC, a Delaware limited liability corporation ("GM LLC"), Kinja Kft., a Hungarian corporation ("Kinja" and together with Holdco and GM LLC, "Sellers")), and Buyer, Buyer will acquire the Acquired Assets; and

WHEREAS, in connection with finalizing the terms of the Purchase Agreement and subsequent to the time that the Sellers had committed substantial effort and expense towards achieving the transactions described in the Asset Purchase Agreement, Buyer requested that Stockholder agree to certain restrictive covenants, in each case, on the terms set out herein, which agreement by Stockholder constitutes a material inducement to Buyer to acquire the Acquired Assets and consummate the other transactions contemplated by the Purchase Agreement, and in consideration of the remuneration to be paid hereunder, Stockholder is entering into this Agreement.

NOW, THEREFORE, in consideration of the foregoing and the mutual agreements hereinafter set forth, the parties hereto agree as follows:

### AGREEMENT

**1.     Compensation; Status**

**1.1.**    For a period beginning on the Closing Date and ending on the date that is twenty-four (24) months thereafter, unless otherwise mutually agreed in writing between the parties hereto (the applicable period being referred to herein as the "Restricted Period"). During the Restricted Period, Stockholder shall receive monthly fees in the amount of sixteen thousand six hundred and sixty six dollars ($16,666) in consideration for the Stockholder's continued compliance with Sections 2.1 and 2.2 below.  Notwithstanding anything herein to the contrary, this Agreement shall terminate immediately upon termination of the Purchase Agreement in accordance with its terms and without any of the transactions thereunder being consummated.

**1.2.**    Stockholder shall not be an employee of Buyer or any of its Affiliates or otherwise render services to Buyer, Buyer may not, at any time, act as a representative for or

on behalf of Buyer for any purpose or transaction, and may not bind or otherwise obligate Buyer in any manner whatsoever, and the payments of the above-referenced compensation shall not be subject to withholding. Stockholder agrees that during the Restricted Period, Stockholder shall not be eligible to participate in any of the employee benefit plans or arrangements of Buyer or any of its Affiliates.

## 2. Non-Competition and Non-Solicitation Covenants

**2.1.** Stockholder covenants and agrees that from the date hereof and continuing through the end of the Restricted Period, Stockholder will not directly or indirectly (without the prior written consent of Buyer) associate (including as a director, officer, employee, partner, consultant, agent or advisor) with any business enterprise that engages in the Business in the United States, Puerto Rico or Hungary. Notwithstanding the foregoing, this Section 2.1 shall not apply to any business activities 

**2.2.** Stockholder covenants and agrees that from the date hereof and continuing through the end of the Restricted Period, Stockholder shall not, and shall not permit its Affiliates to, directly or indirectly, hire or solicit any employee or contractor of Buyer (a "Non-Solicitation Employee"), or encourage any Non-Solicitation Employee to terminate his or her employment or relationship with Buyer, any Seller or any of their respective Subsidiaries, in each case without the prior written consent of Buyer; provided, that none of the following shall be deemed a violation hereof: (i) general employment advertising or a general offer of employment to the public, in each case, carried on or made in good faith that is not targeted at any Non-Solicitation Employee and the hiring of any such employee as a result thereof, (ii) the use of a search firm or employment agency that is not targeted at any Non-Solicitation Employee and the hiring of any such employee as a result of such use or (iii) the employment of any Non- Solicitation Employee who, at such time, has not been for a period of at least six (6) months an employee of Buyer, the Company or any of their respective Subsidiaries and with respect to whom Stockholder is not otherwise in breach of this Section 2.2. Notwithstanding the foregoing, at any time, Stockholder and Buyer may mutually agree to allow Stockholder to solicit for employment or employ any Non-Solicitation Employee.

**2.3.** Stockholder acknowledges that a breach or threatened breach by Stockholder of any of the covenants set forth in Sections 2.1 and 2.2 cannot be reasonably or adequately

compensated in damages in an action at Law, and that Buyer will be entitled to, among other remedies and without posting any bond or other undertaking, such injunctive relief, which may include: (x) restraining Stockholder from engaging in any action that would constitute or cause a breach or violation of this Agreement, (y) obtaining specific performance to compel Stockholder to perform its obligations and covenants hereunder, and (z) obtaining damages available either at Law or in equity. Nothing herein contained shall be construed as prohibiting any party from pursuing any other remedy available to it for such breach or threatened breach. Stockholder shall not take any position inconsistent with the foregoing in any Proceeding.

3.  **Entire Agreement.** This Agreement is the product of the parties hereto, and constitutes the complete agreement and understanding between such parties pertaining to the subject matter hereof and thereof. Any and all other written or oral agreements existing between the parties hereto regarding such transactions are expressly canceled. Any term of this Agreement may be amended or waived with the written consent of Stockholder and Buyer or their respective successors and assigns. Any amendment or waiver effected in accordance with this section shall be binding upon the parties and their respective successors and assigns.

4.  **Successors and Assigns**. The terms and conditions of this Agreement shall inure to the benefit of and be binding upon the respective successors and assigns of Buyer or any of its Affiliates. Stockholder shall not assign this Agreement without the written consent of Buyer. Nothing in this Agreement, express or implied, is intended to confer upon any party other than the parties hereto or their respective successors and assigns any rights, remedies, obligations, or liabilities under or by reason of this Agreement, except as expressly provided in this Agreement.

5.  **Governing Law.** This Agreement and all acts and transactions pursuant hereto and the rights and obligations of the parties hereto shall be governed, construed and interpreted in accordance with the laws of the State of New York, without giving effect to principles of conflicts of law.

6. **Counterparts.** This Agreement may be executed in two or more counterparts, each of which shall be deemed an original and all of which together shall constitute one instrument.

[*Signature Page Follows*]

IN WITNESS WHEREOF, each of the parties hereto has caused this Agreement to be executed and delivered by its duly authorized officer as of the date first above written.

**"BUYER"**

**UNIMODA, LLC**

Name: _____

Title: _____

**"STOCKHOLDER"**

_____

Name: Nick Denton

## EXHIBIT B

**Unredacted Copy of Non-Compete Agreement**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------x
                                      :

In re:                                   :          Chapter 11
                                      :
NICHOLAS G. A. DENTON,         :          Case No. 16-12239 (SMB)
                                      :
                Debtor.[1]                 :
                                      :
------------------------------------------------------------x

**ORDER GRANTING DEBTOR'S MOTION FOR ORDER AUTHORIZING
THE DEBTOR TO REDACT AND FILE UNDER SEAL CERTAIN
CONFIDENTIAL PORTIONS OF NON-COMPETITION AND
<u>NON-SOLICIATION AGREEMENT WITH UNIMODA LLC</u>**

Upon the motion (the "**Motion**")[2] of the debtor and debtor-in-possession in the above-captioned chapter 11 case (the "**Chapter 11 Case**") for entry of an order, pursuant to sections 105(a) and 107(b) of the Bankruptcy Code and Bankruptcy Rule 9018, authorizing the Debtor to redact and file under seal the Carve-Out provision of the Non-Compete Agreement which the Debtor filed in redacted form as an exhibit to the *Debtor's Motion for Order Pursuant to Section 105(a) and 363 of the Bankruptcy Code Approving the Debtor's Entry Into Non-Competition and Non-Solicitation Agreement with UniModa, LLC* (the "**Non-Compete Approval Motion**"); and the Court finding that: (a) the Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, and (b) this matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2); and it appearing that the relief requested in the Motion is in the best interests of the Debtor, and his estate and creditors; and after due deliberation thereon and good and sufficient cause appearing therefor,

It is hereby **ORDERED that:**

---

[1] The last four digits of the Debtor's social security number are 1234.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Motion.

      1.      The Motion is GRANTED as set forth herein.

      2.      In accordance with Bankruptcy Code § 107(b) and Bankruptcy Rule 9018, the Debtor is authorized to redact and file under seal the Carve-Out provision of the Non-Compete Agreement which the Debtor filed in redacted form as an exhibit to the Non-Compete Approval Motion.

      3.      At the conclusion of the Chapter 11 Case, any copies of the documents sealed pursuant to this Order shall be retrieved by the Debtor for disposal.

      4.      Entry of this Order is without prejudice to the right of any party in interest, or the United States Trustee, to seek relief from this Order or any part of it.

      5.      The Court shall retain jurisdiction with respect to all matters arising from or related to the implementation and interpretation of this Order.

Dated: August ___, 2016
       New York, New York

                                    _____
                                    Honorable Stuart M. Bernstein
                                    United States Bankruptcy Judge

55451/0001-13490259