**COHEN & GRESSER LLP**
800 Third Avenue
New York, New York 10022
Telephone: (212) 957-7600
Facsimile: (212) 957-4514
Daniel H. Tabak
Mark Spatz

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-----------------------------------------------------------------x
: 
: 
: 
In re: : Chapter 11
: 
NICHOLAS G. A. DENTON : 
: Case No. 16-12239 (SMB)
Debtor.[1] : 
: 
: 
-----------------------------------------------------------------x

**OBJECTION OF TERRY G. BOLLEA TO DEBTOR'S MOTION FOR ORDER
PURSUANT TO SECTIONS 105(a) AND 363 OF THE BANKRUPTCY CODE
AUTHORIZING THE DEBTOR TO LEASE RESIDENTIAL REAL ESTATE**

Terry G. Bollea, an unsecured creditor, objects to Debtor's Motion for Order Pursuant to Sections 105(a) and 363 of the Bankruptcy Code Authorizing the Debtor to Lease Residential Real Estate (the "Motion").

**PRELIMINARY STATEMENT**

1. Debtor's Motion, if granted, would (1) guarantee that his only saleable investment asset loses nearly $100,000 over the next year and (2) ensure that his only saleable asset is far more difficult to sell and will sell, if at all, for substantially less money than if this Motion is denied. Debtor's effort to significantly encumber his only saleable asset less than four weeks into his bankruptcy case, in a motion made on five-days' notice to his creditors, would

---

[1] The last four digits of Debtor's social security number are 1234.

deprive creditors of an informed vote on a plan of reorganization that the Bankruptcy Code provides and that the Second Circuit recognized in *Lionel*. *See In re Lionel Corp.*, 722 F.2d 1063, 1071 (2d Cir. 1983).

2. According to Debtor, other than his shares in the bankrupt company of which he is the CEO, Debtor's only material asset is a condominium in Manhattan, which he has valued at $4.25 million. Debtor does not plan to live in the condominium; instead, he has signed a rental lease for another apartment but would like to retain the condominium as an investment. But the rental income Debtor would receive under the proposed lease does not even come close to covering the significant monthly costs associated with the condominium. Moreover, Debtor's plan to rent the condominium will encumber the property for up to two years, making it more difficult to sell the only saleable material asset in his estate.

3. Debtor has not provided a sufficient business justification for the Court to ratify his plan to lease his apartment to an unidentified tenant. He has provided no information to determine whether the proposed lease is at fair market value or that he could not obtain another lease at the same or higher rental price. Indeed, Debtor has not even provided the proposed lease itself. And even if this were a fair market lease, Debtor has provided no evidence that leasing the condominium – at guaranteed annual losses of nearly $100,000 for one or two years – is a sound business plan, particularly when it makes it extremely difficult, if not impossible, to sell the condominium at full market value. It is quite understandable that Debtor does not want to sell his former home, but Debtor has not offered a business justification for the proposed lease.

## BACKGROUND

*Debtor's Condominium*

4. Debtor asserts in his declaration that his only two material assets are his ownership interest in Gawker Media Group, Inc. ("GMGI") and his condominium located at 76 Crosby Street, New York, New York 10012 (the "Condominium"). Declaration of Nicholas G. Denton in Support of [the Motion], Dkt. No. 22-1 ("Denton Dec.") ¶ 3. However, as discussed below, GMGI is itself in bankruptcy, and the value of Debtor's ownership interest is very much in doubt. *See* Ex. A (Amended Schedules at 5, Line 19).[2] As a result, the Condominium is Debtor's only saleable asset. Debtor claims that the Condominium is worth approximately $4.25 million based on a December 2015 appraisal. Denton Dec. ¶ 3.

5. Debtor owns the Condominium subject to a $2 million Note and Mortgage dated December 6, 2013, held by JPMorgan Chase Bank, N.A. (the "Mortgage"). Denton Dec. ¶ 4. As of August 1, 2016 – the date Debtor filed for bankruptcy protection – the balance on the Mortgage was approximately $1.73 million. *Id.* Pursuant to the Mortgage, Debtor "is required to make monthly payments of principal and interest in the amount of $14,985.12." *Id.* In addition, Debtor must also pay monthly: (1) condominium association fees in the amount of $3,410.57; (2) real estate taxes in the amount of $790.50; (3) homeowner's insurance in the amount of $403.89; and (4) home maintenance, repair, and upkeep expenses in the amount of $1,000.00. *See* Ex. A (Amended Schedules at 26). In total, Debtor's monthly carrying costs for the Condominium are $20,590.08 (the "Condominium Carrying Costs").

---

[2] All referenced exhibits are attached to the Declaration of Daniel H. Tabak in Support of the [Motion].

*Debtor Does Not Have Adequate Assets or Income to Maintain the Condominium*

6. Debtor is the CEO of GMGI and Gawker Media, LLC ("Gawker Media"). GMGI is the parent company of Gawker Media and Kinja, Kft ("Kinja" and together with Gawker Media and GMGI, the "Debtor Company"). Denton Dec. ¶ 2.

7. Currently, Debtor's salary from the Debtor Company is his sole source of income. *See* Ex. A (Amended Schedules at 24-25). His salary is $41,666.88 per month, or $500,000 per year. *Id.* However, like the Debtor, the Debtor Company is in bankruptcy,[3] and it is in the process of selling nearly all of its assets, which is expected to be completed in the next few weeks. Denton Dec. ¶ 5. Debtor's employment "will terminate as of the closing of the proposed sale." *Id*.

8. The purchaser of the Debtor Company's assets and Debtor have agreed to a Non-Competition and Non-Solicitation Agreement (the "Non-Compete Agreement") that will pay Debtor $16,666 per month for 24 months following the sale. *See* Ex. B (Non-Compete Motion ¶¶ 13-14).

*Debtor's Plan to Avoid the Sale of the Condominium that He Cannot Afford to Maintain*

9. Debtor and his spouse recently rented a "lower cost apartment" than the Condominium. Motion ¶ 12. Debtor has not provided any details of this transaction, including when he entered into the lease and what the monthly rent is.

10. Having obtained alternative housing, Debtor is proposing to lease the Condominium to an unnamed tenant (the "Proposed Lease"). Debtor has not provided the Court with a copy of the Proposed Lease.

---

[3] On June 10, 2016, Gawker Media filed for bankruptcy protection in this Court. A few days later, on June 12, 2016, GMGI and Kinja also filed for bankruptcy. Those bankruptcies are being jointly administered under the matter captioned *In re: Gawker Media LLC, et al*., No. 16-11700 (SMB).

4

11. Debtor has not provided any information regarding the process by which he located the tenant or arrived at the $12,500 rental rate. Debtor has also not provided any information on the creditworthiness of the tenant

12. According to the Debtor, the original start date for the lease was to be August 1, 2016, but the potential tenant agreed to postpone the lease start date. Denton Dec. ¶ 7. The potential tenant now proposes to move in during the week of August 22, 2016. *Id.*

13. Debtor proposes to lease the Condominium for at least one year for $12,500 per month. *See* Motion ¶ 14. In addition, under the Proposed Lease, the unnamed tenant will have a right to renew the lease for an additional year for a modest increase of three percent in rent, *i.e.*, $12,875 per month. *Id.*

14. On its face, the Proposed Lease will not cover the Condominium Carrying Costs. Indeed, it will leave Debtor $8,090.08 short every month for the first year of the lease (or more than $97,000.00 for the year).

15. Debtor has sought expedited relief on his Motion because the prospective unnamed tenant has indicated a desire to move into the Condominium during the week of August 22, 2016, and Debtor believes that there is a "high risk" the prospective tenant will walk away if the lease's start date is delayed any further. *See id.* ¶¶ 15-16. Debtor says he "do[es] not know if … a new tenant would be willing to rent the apartment on the same or materially similar terms as the Proposed Lease." Denton Dec. ¶ 7.

**ARGUMENT**

16. Section 363(b) of the Bankruptcy Code provides that a debtor-in-possession "may use, sell, or lease, other than in the ordinary course of business, property of the estate" after notice and a hearing. 11 U.S.C. § 363(b). Before a court will grant a 363(b) application, the

5

debtor-in-possession bears the burden of establishing a "good business reason" for the proposed transaction. *Lionel Corp.*, 722 F.2d at 1071.

17.     In assessing the debtor-in-possession's business justification for the proposed 363(b) transaction, a court will consider the following non-exclusive factors: (1) the proportionate value of the asset to the estate as a whole; (2) the amount of elapsed time since the filing; (3) the likelihood that a plan of reorganization will be proposed and confirmed in the near future; (4) the effect of the proposed disposition on future plans of reorganization; (5) the proceeds to be obtained from the disposition vis-à-vis any appraisals of the property; (6) which of the alternatives of use, sale or lease the proposal envisions; and (7) whether the asset is increasing or decreasing in value. *Id.*; *see also In re Boston Generating, LLC*, 440 B.R. 302, 322 (Bankr. S.D.N.Y. 2010) (noting that each of the *Lionel* factors supports the ultimate questions of whether there is an "articulated business justification" and a "good business reason" for proceeding with the sale without awaiting the final confirmation of the plan).

18.     If a court determines that the debtor-in-possession has complied with the business judgment rule, the court must then also be satisfied that "(i) proper notice has been given to all creditors and interested parties; (ii) the proposed sale price is fair and reasonable; and (iii) the purchaser is proceeding in good faith." *Boston Generating*, 440 B.R. at 330 (citation omitted).

19.     Here, Debtor has not met his burden. He has provided no evidence for the Court to evaluate his proposal to lease the Condominium – not even the Proposed Lease itself. Nor has Debtor provided information sufficient to demonstrate that the Proposed Lease is a long-term solution, particularly in light of the early stages of this bankruptcy case and the likelihood that the Proposed Lease would prevent Debtor from selling the Condominium, his sole marketable asset for one or two years.

6

## I. Debtor Has Not Even Demonstrated that the Proposed Lease Is a Good Business Deal Regardless of Alternatives.

20. Debtor needs to demonstrate that the Proposed Lease constitutes a good business deal for Debtor and his estate. *See Boston Generating*, 440 B.R. at 330 (explaining that the court must be satisfied that "the proposed sale price is fair and reasonable"). Yet Debtor has not supported his motion with even the most basic information necessary to determine if the Proposed Lease is a good deal:

- *First*, Debtor has not provided the Court with the Proposed Lease. Rather, Debtor has provided the Court with only certain terms that he deems material. Without the lease, it is impossible to evaluate, for example, (i) what other obligations and/or benefits Debtor is receiving and (ii) in what ways Debtor is encumbering the Condominium – Debtor's only marketable asset.

- *Second*, Debtor has not offered any details regarding the proposed tenant's ability to satisfy the proposed monthly lease payments. *See, e.g.*, *id.* (explaining that the court must be satisfied that "the purchaser is proceeding in good faith"). At most, Debtor has informed the Court that the tenant's father has guaranteed the lease, but Debtor has not provided the Court with any information about the father's ability to pay the rental obligations.

- *Third*, Debtor claims that if the proposed tenant does not rent the Condominium, he "has no assurance that he will be able to find another tenant and, even more so, whether another tenant would be willing to rent the Condominium on the same or materially the same terms." Motion ¶ 21. However, Debtor has provided no evidence regarding rental rates for comparable apartments. Likewise, he has not provided evidence of his efforts to lease the Condominium, including how long he has marketed it, whether there have been any other offers, and, if so, the terms of those offers. Without this evidence, it is impossible to assess whether this is a good rental price or whether Debtor could find another tenant at a similar or higher price if this proposed tenant walked away.

21. Without any of this information, it is impossible to evaluate whether Debtor's argument that the proposed plan will benefit the estate is true, and Debtor therefore has not met his burden under section 363(b). *See In re Au Natural Restaurant, Inc.*, 63 B.R. 575, 580 (Bankr. S.D.N.Y. 1986) (denying proposed 363(b) transaction where Debtor had not proffered a business justification because it "failed to support" its petition). And Debtor's alleged need for

7

expedited relief does not justify his failure to support his petition with any real evidence. *See Lionel Corp.*, 722 F.2d at 1071 ("'The need for expedition . . . is not a justification for abandoning proper standards.'" (quoting *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry Inc. v. Anderson*, 390 U.S. 414, 450 (1968))).

## II. Debtor's Proposed Plan Does Not Satisfy the Business Judgment Rule Under the *Lionel* Factors.

22. Even if the Proposed Lease itself is a good deal as leases go, that is not the end of the story. The Second Circuit recognized a need to "strike[] a balance between a debtor's ability to sell its assets [pursuant to Section 363(b)] and the right of a creditor to an informed vote on a plan of reorganization." *Boston Generating*, 440 B.R. at 321 (citing *Lionel Corp.*, 722 F.2d at 1069). As a result, the Second Circuit has laid out several non-exclusive factors to evaluate a proposed transaction under Section 363(b) of the Bankruptcy Code, none of which Debtor has addressed in his motion. In assessing the factors, it is evident that Debtor's proposed plan to lease the Condominium to an unnamed individual does not satisfy the business judgment rule.

23. *First*, when a Debtor attempts to take action with respect to "substantially all of its assets pursuant to 11 U.S.C. § 363(b), instead of waiting for confirmation of a reorganization plan and the safeguards that that process provides, more than cursory scrutiny is required by the Bankruptcy Court." *Mission Iowa Wind Co. v. Enron Corp.*, 291 B.R. 39, 43 (S.D.N.Y. 2003). Under the *Lionel* factors, leasing all or a majority of an estate's assets outside of the estate's reorganization weighs against there being a sufficient business reason necessary to justify such a lease. *See Au Natural Restaurant*, 63 B.R. at 580 (finding that the debtor's application was lacking under the *Lionel* court's proportionality factor where the debtor was attempting to sell all of the assets of the estate); *cf. In re Burke Mountain Recreation, Inc.*, 56 B.R. 72, 73 (Bankr. D. Vt. 1985) (approving a Section 363(b) sale where the asset at issue was worth $20,000.00 and

8

not significant to an estate worth $3.5 million).  The Condominium is Debtor's only saleable asset and, depending on what happens in the Debtor Company's bankruptcy, may prove to be nearly his entire estate.  *See* Ex. A (Amended Schedules at 3-8).

24. *Second*, a Section 363(b) action is particularly inappropriate when a Chapter 11 case is in its initial stages and no determination has been made on the path the debtor will take in reorganizing his estate.  *See In re Beker Indus. Corp.,* 64 B.R. 900, 906 (Bankr. S.D.N.Y. 1986), *rev'd on other grounds,* 89 B.R. 336 (S.D.N.Y.1988) ("A sale of assets out of the ordinary course of business prior to a formulation of a plan of reorganization is entirely inappropriate at this early 'crucial stage where the path the Debtor will take is to be determined.'").  Here, Debtor's Chapter 11 petition is less than four weeks old, there has not yet been a 341 meeting with creditors, and there has been no opportunity yet to determine what treatment of his estate's only saleable asset would be in the best interest of his creditors.

25. *Third*, Debtor's Proposed Lease is inappropriate because it is far too early to determine what effect the encumbrance of the lease on the estate's only asset will have on future plans for reorganization.  Encumbrance of estate property may be permissible when it "would increase cash flow and profits and exploit a competitive advantage."  *In re Copy Crafters Quickprint, Inc.*, 92 B.R. 973, 983 (Bankr. N.D.N.Y. 1988) (internal citations omitted); *see also In re Brileya*, 108 B.R. 444, 445 (Bankr. D. Vt. 1989) (noting that a debtor may encumber estate property when it would provide the estate with needed cash flow); here, the $12,500 rent in the Proposed Lease does not even generate the cash flow necessary to cover the Condominium Carrying Costs of $20,590.08.  Debtor would in effect be locking in a monthly loss of $8,090.08 for one year and a monthly loss of $7,715.08 if the tenant takes the option to extend the lease, assuming the condominium association fees do not increase (as they, unfortunately, always seem

9

to do). Even with the additional cash flow from the Proposed Lease, it is likely Debtor will be spending substantially more than his income.

26. *Fourth*, "the importance of notice cannot be underscored for it is the due process component of a § 363(b) transfer in that it gives all parties in interest an opportunity to be heard." *Copy Crafters Quickprint, Inc.*, 92 B.R. at 983 (citation omitted). Notice "of a pre-confirmation transaction under Code § 363(b) serves as a substitute for the safeguards of disclosure, voting, acceptance and confirmation were it instead part of a Chapter 11 plan." *Id.* Here, Debtor seeks to have his Section 363(b) motion to lease his only saleable asset approved on five-days' notice, without even attaching a copy of the Proposed Lease. This does not come close to approaching the safeguards of a Chapter 11 plan.

27. *Finally*, whether the asset at issue is increasing or decreasing in value is the most important factor to be considered on a Section 363(b) application. *Lionel Corp.*, 722 F.2d at 1071. The Proposed Lease would decrease the value of the Condominium by making it very difficult to sell. A potential purchaser who sought to acquire the Condominium for residential purposes would be forced to pay off the tenant to leave the Condominium. And a potential purchaser who sought to obtain the Condominium for investment purposes would be saddled with a tenant whose rent does not even come close to covering the current Condominium Carrying Costs. Even if a purchaser were willing to acquire the Condominium with an existing tenant, that would likely lower the sale price significantly.

28. At bottom, it appears that Debtor's proposed plan to lease the property for substantially less than the Condominium Carrying Costs would harm, not benefit, the estate. Accordingly, Mr. Bollea respectfully submits that the Motion should be denied.

10

## RESERVATION OF RIGHTS

29. Mr. Bollea reserves the right to raise further and other objections to the Motion at the hearing.

## CONCLUSION

30. For the foregoing reasons, Mr. Bollea respectfully requests that the Court deny the Motion and provide such other and further relief as it deems just and proper.

Date: August 24, 2016
New York, New York

Respectfully submitted

\_\_\_/s/Daniel H. Tabak_____
Daniel H. Tabak
COHEN & GRESSER LLP
800 Third Avenue, 21st Floor
New York, New York 10003
Tel: (212) 957-7600
dtabak@cohengresser.com

Eric B. Fisher
BINDER & SCHWARTZ LLP
366 Madison Avenue, Sixth Floor
New York, New York 10017
Tel: (212) 933-4551
efisher@binderschwartz.com

*Attorneys for Terry G. Bollea*