**Hearing Date and Time: October 25, 2016 at 10:00 a.m. (Eastern Time)**
**Objection Deadline: October 18, 2016 at 4:00 p.m. (Eastern Time)**

**COLE SCHOTZ P.C.**
Ilana Volkov
Mark Tsukerman
1325 Avenue of the Americas, 19th Floor
New York, New York 10019
Telephone: (212) 752-8000
Facsimile: (212) 752-8393

*Counsel for Debtor and*
*Debtor-in-Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

----------------------------------------------------------x
                                                          :
In re:                                                    :    Chapter 11
                                                          :
NICHOLAS G. A. DENTON,                                    :    Case No. 16-12239 (SMB)
                                                          :
                  Debtor.[1]                              :
                                                          :
----------------------------------------------------------x

**DEBTOR'S APPLICATION TO RETAIN AND**
**EMPLOY DOUGLAS ELLIMAN REAL ESTATE AS BROKER**

Nicholas Denton, the debtor and debtor in possession in the above-captioned chapter 11 case (the "**Debtor**"), hereby files this application (the "**Application**") for an order, substantially in the form of the proposed order attached as **Exhibit A** (the "**Proposed Order**"), pursuant to sections 327(a) and 328(a) of title 11 of the United States Code (the "**Bankruptcy Code**"), Rule 2014(a) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") and Rule 2014-1 of the Local Bankruptcy Rules for the Southern District of New York (the "**Local Rules**") authorizing the Debtor to retain and employ Douglas Elliman Real Estate ("**Douglas Elliman**") as real estate broker for the sale or lease of the Condominium (defined below). In

---
[1] The last four digits of the Debtor's social security number are 1234.

support of the Application, the Debtor submits the declaration of Steven James (the "**James Declaration**"), which is attached as **Exhibit B**. In further support of the Application, the Debtor respectfully states as follows:

## Jurisdiction

1. This Court has jurisdiction to consider the Application pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

2. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The bases for the relief requested herein are sections 327(a) and 328(a) of the Bankruptcy Code, Bankruptcy Rule 2014(a) and Local Rule 2014-1.

## Background

**A.     The Bankruptcy Proceedings**

4. On August 1, 2016 (the "**Petition Date**"), the Debtor filed a petition for relief under chapter 11 of the Bankruptcy Code (the "**Chapter 11 Case**"). The Debtor's chapter 11 filing was precipitated by an adverse verdict in an action entitled, *Bollea v. Gawker Media, LLC, et al.*, No. 12012447-CI-011 (Fla. 6th Jud. Cir. Pinellas Cty.), in which the jury entered an award against the Debtor in the amounts of $115 million and $10 million for compensatory and punitive damages, respectively. The Debtor intends to prosecute an appeal of the awards.

5. The Debtor is the founder and former CEO of Gawker Media Group, Inc. ("**GMGI**") and Gawker Media, LLC ("**Gawker Media**"), an online media company. GMGI is the parent company of Gawker Media and Kinja, Kft., a Hungarian corporation ("**Kinja**" and together with Gawker Media and GMGI, the "**Company**"). The Debtor owns approximately 30% of the shares of GMGI. A summary of the Debtor's assets and liabilities, and the circumstances leading to the filing of the Chapter 11 Case, is set forth in the *Declaration of Nicholas G.A. Denton Pursuant to Local Bankruptcy Rule 1007-2* [Docket No. 11].

6. The Debtor continues to manage his assets and affairs as a debtor in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

7. To date, no creditors' committee has been appointed in the Chapter 11 Case by the Office of the United States Trustee for the Southern District of New York (the "**U.S. Trustee**"). No trustee or examiner has been appointed in the Chapter 11 Case.

**B.  The Debtor's Condominium**

8. The Debtor owns and currently resides at his principal residence located at 76 Crosby Street, New York, New York 10012 (the "**Condominium**"). Aside from the Debtor's ownership interests in GMGI, the Condominium is the Debtor's only other material asset. According to a December 2015 appraisal, the Condominium is worth approximately $4,250,000.

9. The Condominium is subject to a Note and Mortgage dated December 6, 2013 (collectively, the "**Mortgage**") held by JP Morgan Chase Bank, N.A. (the "**Bank**"), in the original principal amount of $2,000,000. Pursuant to the Mortgage, the Debtor is required to make monthly payments of principal and interest in the amount of $14,985.12. As of the Petition Date, the balance of the Mortgage was approximately $1,732,753.46. In addition to his Mortgage obligations, the Debtor's monthly obligations associated with the Condominium include condominium association fees in the amount of $3,410.57 and real estate taxes in the approximate amount of $790.50.

10. The Debtor had been servicing the monthly carrying costs associated with the Condominium from his salary with the Company. However, his employment and salary with the Company will terminate or be materially reduced as of the closing (the "**Closing Date**") of the proposed sale (the "**Sale**") of substantially all of the Company's assets to UniModa, LLC ("**UniModa**") in Company's bankruptcy cases, which occurred on September 9, 2016.

3

Thereafter, the Debtor will receive compensation under a Non-Competition and Non-Solicitation Agreement (the "**Non-Compete Agreement**") the Debtor entered into with UniModa, which was approved by the Court on September 7, 2016. [*See* Docket No. 51]. The Debtor's income under the Non-Compete Agreement, however, also will be a material reduction from the salary he received from the Company.

11. On August 19, 2016, the *Debtor filed a Motion for Order Pursuant to Sections 105(a) and 363 of the Bankruptcy Code Authorizing the Debtor to Lease Residential Real Estate* [Docket No. 22] (the "**Lease Approval Motion**"), by which he sought the Court's authorization to rent the Condominium for one or two years pursuant to a proposed lease with a prospective tenant. Following an evidentiary hearing held on August 24, 2016, the Court denied the Lease Approval Motion, without prejudice to the Debtor's ability file motion to approve a different lease transaction. On September 2, 2016, the Court entered an Order denying the Lease Approval Motion. [*See* Docket No. 50].

**C.     The Proposed Sale of the Condominium and Retention of Douglas Elliman as the Debtor's Real Estate Broker**

12. In view of the monthly costs associated with the Condominium and the reduction in the Debtor's income, the Debtor has determined that it is appropriate to list the Condominium on the market for sale in order to maximize value to his estate. In that regard, the Debtor seeks to retain and employ Douglas Elliman as his real estate broker pursuant to the terms of an exclusive listing agreement (the "**Engagement Agreement**"), a copy of which is attached as **Exhibit C**.

13. The Debtor will file a motion on appropriate notice to creditors and parties in interest to obtain the Court's approval of any sale or lease of the Condominium and the procedures or process employed by the Debtor in connection therewith.

4

**Relief Requested**

14. By this Application, the Debtor seeks an order, substantially in the form of the attached Proposed Order, pursuant to sections 327(a) and 328(a) of the Bankruptcy Code, Bankruptcy Rule 2014(a), and Local Rule 2014-1, authorizing the Debtor to retain and employ Douglas Elliman as real estate broker for the sale or lease of the Condominium pursuant to the terms of the Engagement Agreement.

**Basis for Relief**

**A.    Douglas Elliman's Qualifications**

15. The Debtor seeks to retain Douglas Elliman to assist with the marketing and sale of the Condominium. As stated in the James Declaration, Steven James will be the Broker of record and Jared Seligman will be the agent primarily responsible for the listing. The Debtor selected Mr. Seligman due to his outstanding reputation as someone with a great client list and a specialty in distinctive residential properties throughout New York City. Mr. Seligman has sold upwards of $800 million of real estate and has been featured as an expert in the field in prestigious publications such as The New York Times, The Wall Street Journal, Vogue, Forbes, New York Post, New York Daily News, The New York Observer, and The Real Deal. The profiles of Mr. James, Mr. Seligman, and Mr. Seligman's team profile on Douglas Elliman's website are attached as **Exhibit D**.

16. The Debtor believes that Douglas Elliman is well-qualified to assist him with the marketing and sale of the Condominium, and Douglas Elliman has stated its desire and willingness to act as broker for the Debtor in the Chapter 11 Case pursuant to the terms of the Engagement Agreement.

### B. Summary of the Engagement Agreement

17. The terms and conditions of the Engagement Agreement is the product of arms' length negotiations between the Debtor and Mr. Seligman and reflect the parties' mutual agreement as to the efforts that will be required in this engagement. A summary of the salient terms of the Engagement Agreement is as follows:

  a. Douglas Elliman will have the exclusive right to sell or lease the Condominium for a period of 180 days from the date of the agreement (the "**Exclusive Period**"). At the end of the exclusive period, the listing will automatically convert to an open, non-exclusive listing, unless the Debtor advises Douglas Elliman otherwise.

  b. During the Exclusive Period, the Debtor must refer all inquiries, proposals and offers received by the Debtor regarding the Condominium to Douglas Elliman, including, without limitation, those from principals and other brokers, and will conduct all negotiations with respect to the sale, lease or other disposition of the Condominium solely and exclusively through Douglas Elliman.

  c. Douglas Elliman will be authorized to offer the property for sale at a price of $4,250,000.

  d. Within three (3) business days of the expiration of the Exclusive Period, Douglas Elliman must deliver to the Debtor, in writing, a list of no more than six (6) prospective purchasers and (6) prospective tenants. If within ninety (90) days after the expiration of the Exclusive Period, a contract is signed to sell the property to a purchaser on such list or a lease is signed to rent the property to a prospective tenant, then Douglas Elliman shall be entitled to a commission.

  e. If the Debtor agrees to sell the Condominium pursuant to the Engagement Agreement, Douglas Elliman will be entitled to a commission of five (5%) percent of the total sale price of the property, and of any household furnishings and any garage and storage space included in such sale.

  f. If the Debtor agrees to lease the Condominium pursuant to the Engagement Agreement, Douglass Elliman will be entitled to fifteen (15%) percent of the aggregate rent for the first year of the lease. Moreover, if the tenant under such lease purchases the property during the term of the lease (or any extensions thereof) or within six (6) months of the tenant's vacating the property, then the Debtor shall pay Douglas

6

Elliman a commission equal to five (5%) percent of the total sales price of the property.[2]

### C. Compensation

18. The Debtor believes the commission proposed under the Engagement Agreement is comparable to those generally charged by residential real estate brokers for comparable engagements.

19. The Debtor respectfully submits that, in as much as Douglas Elliman's compensation is results-oriented and directly related to benefits received by the Debtor's estate resulting from the sale or lease of the Condominium, requiring Douglas Elliman to file periodic fee applications pursuant to section 330 and 331 of the Bankruptcy Code and in compliance with Bankruptcy Rule 2016 and Local Rule 2016-1 is unnecessary. As stated above, Douglas Elliman's compensation will not be calculated and paid based on the number of hours it expends providing services to the Debtor. It is Douglas Elliman's general practice and the general practice of listing agents who provide similar services, to be paid on a contingency fee basis, rather than keeping detailed time records similar to those customarily kept by attorneys. Therefore, the Debtor submits that requiring Douglas Elliman to file periodic fee applications pursuant to sections 330 and 331 of the Bankruptcy Code is unnecessary because Douglas Elliman will not be paid unless and until it sells the Condominium for the Debtor.

20. Douglas Elliman will, however, file with the Court a final application for allowance of fees and reimbursement of expenses in accordance with the procedures set forth in the Bankruptcy Code, the Bankruptcy Rules and Local Rules and any orders of the this Court. Owing to the nature of the engagement, however, the Debtor further proposes that Douglas

---

[2] The Debtor's main intention is to sell the Condominium, but nonetheless seeks approval of the lease provision of the engagement in view of the Court's without prejudice denial of the Lease Approval Motion and in the interest of maintaining maximum optionality.

Elliman shall not be required to maintain or submit to the Court, as part of its final fee application or otherwise, time records in connection with the services rendered under the Engagement Agreement. The proposed compensation to Douglas Elliman shall, owing to its nature, be subject to modification upon final allowance only pursuant to the "improvident" standard of section 328(a) of the Bankruptcy Code.

### D.    Disinterestedness of Douglas Elliman

21.    To the best of the Debtor's knowledge, Douglas Elliman and its employees and agents do not have has any connection with, or any interest adverse to, the Debtor or his estate and creditors except as set forth in the James Declaration.

22.    Furthermore, Douglas Elliman has represented to the Debtor that it has not provided and will not provide services to any parties other than the Debtor in this Chapter 11 Case or in conjunction with any matters that would be adverse to the Debtor arising from, or related to, this Chapter 11 Case.

23.    Based upon the James Declaration, the Debtor believes that Douglas Elliman is a "disinterested person," as such term is defined in section 101(14) of the Bankruptcy Code. Douglas Elliman has informed the Debtor that it will conduct an ongoing review of its files and promptly supplement its disclosure to the Court in the event the circumstances change or new information is discovered from that presented in the James Declaration.

### Applicable Authority

24.    The Debtor seeks authority to employ and retain Douglas Elliman as his real estate broker under section 327 of the Bankruptcy Code, which provides that a trustee (or debtor or debtor in possession, by virtue of sections 1101(1)), subject to court approval—

> may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested

8

> persons, to represent or assist the trustee in carrying out the trustee's duties under this title.

11 U.S.C. § 327(a).

25. The Debtor seeks approval of the terms of the Engagement Agreement, including the proposed compensation to Douglas Elliman, pursuant to section 328(a) of the Bankruptcy Code. Section 328(a) of the Bankruptcy Code provides that a debtor, subject to court approval—

> may employ or authorize the employment of a professional person under section 327 or 1103 of this title, as the case may be, on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis.

11 U.S.C. § 328(a).

26. Section 328 of the Bankruptcy Code permits the compensation of professionals on more flexible terms that reflect the nature of their services and market conditions. As the United States Court of Appeals for the Fifth Circuit recognized in *Donaldson Lufkin & Jenrette Sec. Corp. v. Nat'l Gypsum Co. (In re Nat'l Gypsum Co.)*, 123 F.3d 861 (5th Cir. 1997):

> Prior to 1978 the most able professionals were often unwilling to work for bankruptcy estates where their compensation would be subject to the uncertainties of what a judge thought the work was worth after it had been done. That uncertainty continues under the present § 330 of the Bankruptcy Code, which provides that the court award to professional consultants "reasonable compensation" based on relevant factors of time and comparable costs, etc. Under present § 328 the professional may avoid that uncertainty by obtaining court approval of compensation agreed to with the trustee (or debtor or committee).

*Id.* at 862 (citations omitted), cited in *Riker, Danzig, Scherer, Hyland & Perretti LLP v. Official Comm. of Unsecured Creditors (In re Smart World Techs., LLC)*, 383 B.R. 869, 874 (S.D.N.Y. 2008). Owing to this inherent uncertainty, courts have approved similar arrangements that contain reasonable terms and conditions under Bankruptcy Code section 328. *See, e.g.*, *The Great Atlantic & Pacific Tea Co., Inc.*, No. 15-23007 (RDD) (Bankr. S.D.N.Y. September 15,

9

2015), ECF No. 926 (authorizing the retention of a real estate advisor under section 328); *In re Old Carco LLC (f/k/a Chrysler LLC)*, No. 09-50002 (AJG) (Bankr. S.D.N.Y. Feb. 18, 2010), ECF No. 6416 (authorizing retention of real estate broker under section 328); *In re St. Vincent's Catholic Med. Ctrs. of New York*, No. 10-11963 (CGM) (Bankr. S.D.N.Y. May 18, 2010), ECF No. 304 (same). Section 328(a), together with section 330, establishes a "two-tiered system for judicial review and approval of the terms of the professional's retention." *In re Smart World Techns., LLC*, 552 F.3d 228, 232 (2d Cir. 2009).

27. Whereas section 330 of the Bankruptcy Code authorizes a bankruptcy court to award reasonable compensation "based on an after-the-fact consideration," section 328(a) "permits a bankruptcy court to forego a full post-hoc reasonableness inquiry" if it pre-approves the terms of employment. *Id.* "These two inquiries are mutually exclusive, as '[t]here is no question that a bankruptcy court may not conduct a § 330 inquiry into the reasonableness of the fees and their benefit to the estate if the court already has approved the professional's employment under 11 U.S.C. § 328.'" *Id.* at 233 (quoting *In re B.U.M. Int'l., Inc.*, 229 F.3d 824, 829 (9th Cir. 2000)).

28. Furthermore, the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 specifically amended section 328(a) of the Bankruptcy Code to extend its reach to include approval of compensation "on a fixed or percentage fee basis." That change makes clear that a debtor may seek to retain a professional on a fixed or percentage fee basis, such as is proposed herein, with bankruptcy court approval.

29. Accordingly, the Debtor believes that the retention and engagement of Douglas Elliman on the terms and conditions proposed herein is appropriate and should be approved.

10

## Notice

30.     Notice of this Application has been provided to (i) the U.S. Trustee, (ii) the holders of the twenty (20) largest unsecured claims against the Debtor, (iii) the Bank, (iv) the Condominium Association, (v) any party that has filed a notice of appearance in this case, and (vi) any such other party entitled to notice pursuant Bankruptcy Rule 2002 and Local Bankruptcy Rule 9013-1(b).  The Debtor respectfully submits that no other or further notice is required.

**Conclusion**

WHEREFORE, the Debtor respectfully requests that the Court enter an order, substantially in the form as the Proposed Order attached as Exhibit A, (a) granting the relief requested in the Application and (b) granting such other relief as the Court deems just and proper under the circumstances.

Dated: New York, New York
October 5, 2016

        COLE SCHOTZ P.C.

        /s/ *Ilana Volkov*
        Ilana Volkov
        Mark Tsukerman
        1325 Avenue of the Americas, 19th Floor
        New York, New York 10019
        Telephone: (212) 752-8000
        Facsimile: (212) 752-8393

        – and –

        Warren A. Usatine (admitted *pro hac vice*)
        Court Plaza North
        25 Main Street
        P.O. Box 800
        Hackensack, New Jersey 07602-0800
        Telephone: (201) 489-3000
        Facsimile: (201) 489-1536

        *Counsel for Debtor and Debtor-in-Possession*