**Hearing Date: October 25, 2016 at 10:00 a.m. (ET)**
**Objection Deadline: October 18, 2016 at 4:00 p.m. (ET)**

**COLE SCHOTZ P.C.**
Ilana Volkov, Esq.
Mark Tsukerman, Esq.
1325 Avenue of the Americas, 19th Floor
New York, New York  10019
Telephone: (212) 752-8000
Facsimile: (212) 752-8393

*Counsel for Debtor and Debtor-in-Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------x
                    :
In re:                     :       Chapter 11
                    :
NICHOLAS G. A. DENTON,    :       Case No. 16-12239 (SMB)
                    :
           Debtor.[1]    :
                    :
---------------------------------------------------------X

## DEBTOR'S APPLICATION FOR AN ORDER AUTHORIZING THE RETENTION AND EMPLOYMENT OF LEVINE SULLIVAN KOCH & SCHULZ, LLP AS SPECIAL LITIGATION COUNSEL EFFECTIVE NUNC PRO TUNC TO THE PETITION DATE

Nicholas Denton, the debtor and debtor-in-possession in the above-captioned chapter 11 case (the "**Debtor**"), hereby files this application (the "**Application**") for an order, substantially in the form of the proposed order attached as **Exhibit A** (the "**Proposed Order**"), authorizing the Debtor to retain and employ Levine Sullivan Koch & Schulz, LLP ("**LSKS**") as special litigation counsel, *nunc pro tunc* to the Petition Date (as defined below) pursuant to sections 327(e), 328(a) and 330 of title 11 of the United States Code (the "**Bankruptcy Code**"), Rule 2014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Rule 2014-1 of the Local Bankruptcy Rules for the Southern District of New York (the "**Local Rules**").  In

---

[1] The last four digits of the Debtor's social security number are 1234.

support of the Application, the Debtor submits the Declaration of Seth D. Berlin (the "**Berlin**

**Declaration**") attached as **Exhibit B**.  In further support of the Application, the Debtor

respectfully represents as follows:

## Jurisdiction

1.      This Court has jurisdiction to consider the Application pursuant to 28 U.S.C.

§§ 157 and 1334.  This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

2.      Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      The statutory and legal predicates for the relief requested herein are sections

327(e), 328(a) and 330 of the Bankruptcy Code, Bankruptcy Rule 2014, and Local Rule 2014-1.

## Procedural Background

4.      On August 1, 2016 (the "**Petition Date**"), the Debtor filed a petition for relief

under chapter 11 of the Bankruptcy Code (the "**Chapter 11 Case**").

5.      The Debtor is the founder and former CEO of Gawker Media Group, Inc.

("**GMGI**") and Gawker Media, LLC ("**Gawker Media**"), an online media company.  GMGI

is the parent company of Gawker Media and Kinja, Kft., a Hungarian corporation ("**Kinja**"

and together with Gawker Media and GMGI, the "**Company**").[2]  The Debtor owns

approximately 30% of the shares of GMGI.  A summary of the Debtor's assets and liabilities,

and the circumstances leading to the filing of the Chapter 11 Case, is set forth in the

*Declaration of Nicholas G.A. Denton Pursuant to Local Bankruptcy Rule 1007-2* [Docket No.

11].

---

[2] On June 10, 2016, Gawker Media filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code, and on June 12, 2016, GMGI and Kinja each filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code (collectively, the "**Gawker Chapter 11 Cases**").  On August 22, 2016, the Court entered an Order approving the sale of substantially all the Company's assets to UniModa, LLC.  The sale closed on September 9, 2016.  The Debtor's employment as CEO with the Company terminated as of the closing of the sale.

55451/0001-13547639v2

6.      The Debtor continues to manage his assets and affairs as a debtor in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

7.      To date, no creditors' committee has been appointed in the Chapter 11 Case by the Office of the United States Trustee for the Southern District of New York (the "**U.S. Trustee**").  No trustee or examiner has been appointed in the Chapter 11 Case.

## Relief Requested

8.      The Debtor seeks an order of this Court, pursuant to Sections 327(e), 328(a) and 330 of the Bankruptcy Code, Bankruptcy Rule 2014, and Local Rule 2014-1 authorizing the Debtor to employ and retain LSKS, effective *nunc pro tunc* to the Petition Date, as the Debtor's special counsel to perform legal services attendant to the Pending Actions (defined below), as more fully described herein.

9.      For the reasons set forth below, the Debtor submits that the relief requested is in the best interest of the Debtor and his estate and creditors and, therefore, should be granted.

## The Retention of LSKS

10.     As stated in the Berlin Declaration, LSKS is a national law firm that practices exclusively in the field of Media Law, including First Amendment, Entertainment, and Intellectual Property law.  Since 2012, LSKS has represented the Company with respect to various First Amendment, newsroom, media, defamation, privacy, copyright, and other similar matters in litigation in courts throughout the country and in non-litigated matters.  In that regard, LSKS has defended the Debtor in various lawsuits that were commenced against the Debtor in connection with his former role as the Company's CEO.  The Debtor seeks to retain LSKS as special litigation counsel because of LSKS's expertise with respect to First Amendment and Media law, and its experience, knowledge and familiarity with certain lawsuits pending against the Debtor.

3

11.     LSKS was first retained by the Debtor in October 2012 to defend the Debtor,

Gawker Media and certain affiliated entities and individuals, against privacy and related claims

brought by Terry Gene Bollea, the wrestler and celebrity known as "Hulk Hogan," arising from

Gawker Media's publication of excerpts from a tape depicting him engaged in an affair with

Heather Clem, the wife of his best friend, radio "shock jock" Bubba the Love Sponge Clem (the

"**Bollea Litigation**").

12.     Although LSKS represented the Debtor and Gawker Media (as well as the other

affiliated defendants) jointly, the Debtor and Gawker Media executed separate engagement

agreements.  The Debtor's engagement agreement with LSKS, dated November 7, 2012, recited,

among other things, that the Debtor was being indemnified by Gawker Media and any fees and

costs incurred by LSKS on the Debtor's behalf was to be paid by Gawker.

13.     The Bollea Litigation was originally filed in federal court, and captioned *Bollea v.

Gawker Media, LLC*, 8:12-cv-2348-T-27TBM (M.D. Fla.).  After several motions seeking

preliminary injunctive relief were denied by the federal court on First Amendment grounds, *see,

e.g.*, *Bollea v. Gawker Media, LLC*, 2012 WL 5509624 (M.D. Fla. Nov. 14, 2012); *Bollea v.

Gawker Media, LLC*, 913 F. Supp. 2d 1325 (M.D. Fla. 2012), the plaintiff dismissed his federal

court action, and re-filed his claims in state court, adding them to an existing lawsuit against the

Clems.  *See Bollea v. Gawker Media, LLC, et al*., No. 12012447CI-011 (Fla. Cir. Ct.).

14.     The lawsuit involved extensive proceedings in the Florida courts.  Following the

dismissal of the other defendants, the case was tried in March 2016 against the Debtor, Gawker

Media, and A.J. Daulerio (the "**Bollea Litigation Defendants**"), and resulted in a $140.1 million

verdict.  The Debtor was found to be jointly and severally liable with Gawker Media and Mr.

Daulerio with respect to $115 million in compensatory damages and separately liable with

4

respect to $10 million in punitive damages.    On June 8, 2016, the Florida trial court entered final

judgment with respect to the jury's award (the "**Bollea Judgment**").

15.    The issuance of the Bollea Judgment was the precipitating cause for the Debtor

filing this Chapter 11 Case, as well as the Company's commencement of the Gawker Chapter 11

Cases.  The Bollea Litigation Defendants have filed a notice of appeal and intend to prosecute an

appeal from the Bollea Judgment (the "**Appeal**").

16.    In addition to the Bollea Litigation, LSKS represented the Debtor, and by this

Application seeks to continue to represent the Debtor, in the following pending lawsuits

(collectively, and together with the Bollea Litigation, the "**Pending Actions**"):

(a)    In January 2016, LSKS was engaged to defend the Debtor, Gawker Media,

John Cook and Sam Biddle in *Terrill v. Gawker Media, LLC, et al.*, No. 16-cv-00411 (S.D.N.Y.),

regarding an article Gawker Media published about the plaintiff's investigation into a prominent

technology executive best known for working at the billion-dollar technology company, Tinder.

The *Terrill* litigation currently is pending in the Southern District of New York.  The plaintiff is

seeking at least $10,000,000 in damages.

(b)    In May 2016, LSKS was retained to defend the Debtor, Gawker Media,

John Cook and Sam Biddle against claims in *Ayyadurai v. Gawker Media, LLC, et al.*, 16-cv-

10853 (D. Mass.), regarding articles it published about plaintiff's purported invention of email.

The *Ayyadurai* litigation is pending in the District of Massachusetts.  The plaintiff is seeking at

least $35,000,000 in damages.

(c)    In February 2016, LSKS was retained to represent the Debtor, Gawker

Media, Irin Carmon and Gaby Darbyshire in *Huon v. Denton*, No. 15-3049 (7th Cir.), in an

appeal arising from a post on a Gawker Media website that reported on a defamation suit

5

plaintiff filed against a co-defendant.  Huon appealed the trial court's order dismissing his claims

against Gawker Media and the other affiliated defendants with prejudice.  *See Huon v. Breaking*

*Media, LLC*, 75 F. Supp. 3d 747 (N.D. Ill. 2014).  The appeal currently is pending before the

United States Court of Appeals for the Seventh Circuit.  On August 25, 2016, the Seventh Circuit

issued an Order suspending the appeal with respect to the Debtor, and requiring that counsel for

the Debtor file a status report regarding the bankruptcy proceedings by October 25, 2016.  The

Debtor intends to file a motion in this Court seeking relief from the automatic stay to allow the

Seventh Circuit to render a decision with respect to the appeal and issue any order in connection

therewith.

17.    The Debtor seeks to retain and employ LSKS to represent him in connection with

the Pending Actions, as part of a joint representation in which LSKS will also represent Gawker

Media and the other individual defendants.[3]  On September 23, 2016, this Court entered an Order

in the Gawker Chapter 11 Cases [Lead Case No. 16-11700, Docket No 288] (the "**Gawker**

**LSKS Retention Order**"), authorizing and approving the Company's retention and employment

of LSKS to jointly represent the Company, the Debtor and other individuals with respect to the

Pending Actions, and certain other matters, on the terms specified therein.  The Debtor's

proposed engagement of LSKS by this Application is intended to be consistent with, and not to

conflict with, the terms of the joint representation set forth in the Gawker LSKS Retention Order.

18.    The professional services to be provided by LSKS during the Chapter 11 Case

include advising and representing the Debtor in connection with the Pending Actions and all

matters relating thereto, as well as consulting as needed with the Debtor's counsel in this

---

[3] While the Debtor will be seeking relief from the automatic stay to allow some or all of the Pending
Actions to proceed, nothing herein shall be deemed consent by the Debtor to modification of the automatic stay
regarding any of the Pending Actions at this time.

proceeding in connection with any matters related to the Pending Actions. LSKS shall not provide advice or representation to the Debtor and/or any other client with respect to any matter or issue where there is an actual or potential conflict of interest between or among the clients including, but not limited to, with respect to any rights of indemnification and/or contribution against each other or with respect to the allocation of any judgment or settlement among the clients.

19.     No other law firm is providing the Debtor with LSKS' contemplated services herein, except that Thomas & LoCicero PL, 601 South Blvd., P.O. Box 2602 (33601), Tampa FL 33606, and Brannock & Humphries, 1111 West Cass Street, Suite 200, Tampa FL, 33606, are also providing services as local counsel in connection with the Bollea Litigation. The Debtor is filing separate applications to retain both firms.

20.     LSKS will work with the Debtor's bankruptcy counsel, Cole Schotz P.C. ("**Cole Schotz**"), and the Company's bankruptcy counsel, Ropes & Gray LLP (**"Ropes & Gray"**), and if approved by the Court, Thomas & LoCicero and Brannock & Humphries, to ensure that the services provided by each firm are complementary of each other and not duplicative.

21.     If the Debtor was required to retain counsel other than LSKS, the Debtor and his estate would lose the benefit of LSKS's experience and expertise on the matters for which LSKS has been representing the Debtor prior to the filing of the Chapter 11 Case. Moreover, the duplicative costs involved in replacing LSKS at this juncture with respect to the Pending Actions would be harmful to the Debtor and his estate and creditors.

22.     The Debtor respectfully submits that LSKS is well-qualified and uniquely able to provide the specialized legal advice sought by the Debtor as set forth herein in an efficient and

55451/0001-13547639v2

cost-effective manner, and LSKS's retention as special litigation counsel is in the best interests

of the Debtor and his estate.

23.    LSKS's proposed engagement is appropriate and necessary to enable the Debtor

to achieve final resolution of the Appeal and the other Pending Actions.

### Professional Compensation

24.    Pursuant to the Gawker LSKS Retention Order, with respect to the compensation

of LSKS for joint services, the Company will be liable for 85% of LSKS's fees and 100% of its

expenses, as may be approved by the Court in the Gawker Chapter 11 Cases.  For purposes of

this Application, joint services shall refer to services performed by LSKS on behalf of the

Debtor, Gawker Media, and/or any other defendant in the Pending Actions (the "**Joint

Services**").

25.    Subject to Court approval, in accordance with section 330 of the Bankruptcy

Code and as set forth in the Berlin Declaration, the Debtor and LSKS have agreed that the

Debtor shall be liable for two-thirds of the remaining 15% of LSKS's fees for Joint Services

performed on behalf of the Debtor that the Company is not covering.  In other words, the Debtor

shall be liable for 10% of LSKS's total fees for Joint Services performed on behalf of the Debtor.

Further, with respect to any services which may be performed by LSKS solely on the Debtor's

behalf, the Debtor will be solely responsible for 100% of LSKS's fees and expenses.

26.    Notwithstanding the above described allocation to the Debtor for LSKS's fees and

expenses, and subject in all respects to Court approval upon the filing of the appropriate

application in accordance with section 330 of the Bankruptcy Code and the United States

Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses,

LSKS's recovery with respect to any of such fees and expenses from the Debtor's estate shall be

contingent upon and limited to:  (a) any recovery the Debtor may receive on account of his

8

claims for indemnification against Gawker Media and GMGI, (b) any recovery the Debtor may receive on account of his equity interests in GMGI, and/or (c) the proceeds of any insurance policies, if any, of which the Debtor is a beneficiary, to the extent such policies covers the Debtor's liability and/or defense costs associated with the Pending Actions.

27.    Subject to the compensation structure set forth above, LSKS shall accrue fees on an hourly basis, at the following rates:

| Professional Level | Hourly Rate |
| --- | --- |
| Senior Partner | $515 |
| Partner | $490 |
| Of Counsel | $490 |
| Senior Associate | $405 |
| Mid-Level Associate | $380 |
| Junior Associate | $330 |
| Paralegal | $215 |
| Law Clerk | $240 |

28.    The preferred hourly rates set forth above are approximately twenty percent below LSKS's standard rates for similar matters, which LSKS agreed to use based on the volume of work that it has been engaged to perform on behalf of the Company and the Debtor, and based on its continued engagement in the Gawker Chapter 11 Cases and the proposed engagement herein. Those preferred hourly rates are subject to modest periodic adjustments, usually on February 1 of each year, to reflect economic and other conditions.

29.    LSKS will maintain detailed, contemporaneous records of time and those actual and necessary expenses, for which it bills its clients, incurred in connection with the rendering of the legal services described above by category and nature of services rendered. In that regard, LSKS does not charge clients, including the Debtor, on the matters enumerated above, for certain expenses (which are incorporated into the above-referenced hourly rates), including internal

photocopying, postage, long distance telephone expenses, ordinary delivery charges or computerized legal research.

### No Adverse Interest

30.     To the best of the Debtor's knowledge, and based upon the Berlin Declaration, LSKS does not represent or hold an interest adverse to the Debtor or his estate with regard to the matters on which LSKS is to be engaged.  Further, to the best of the Debtor's knowledge, except as specifically set forth in the Berlin Declaration and as described herein, LSKS has not represented the Debtor's creditors or any other parties in interest in any matter relating to the Debtor or his estate.[4]

31.     As stated in the Berlin Declaration, LSKS provided services to the Debtor prior to the Petition Date and continues to do so as of the date of this Application.  Since its engagement by the Debtor in 2012 and until the Gawker Chapter 11 Cases were commenced on June 10, 2016, LSKS has regularly billed, and was paid current by the Company, for its legal services on behalf of the Debtor.  Since the date the Gawker Chapter 11 Cases were commenced, however, LSKS has accrued (but not billed) time and associated charges, and incurred disbursements, for services performed on behalf of the Debtor through the Petition Date.  LSKS estimates that it is owed $87,493.00 by the Debtor on account of prepetition services.  The Debtor has not made any payments or transfers to LSKS on account of LSKS's services in the ninety days prior to the Petition Date.

32.     Further, as previously stated, LSKS will also represent Gawker Media and certain individual non-Debtor defendants in the Pending Actions, as described above.  For the reasons set forth in the Berlin Declaration, however, the Debtor does not believe that there is a material

---

[4] If any new facts or circumstances are discovered, LSKS will supplement its disclosure to the Court.

55451/0001-13547639v2

conflict between the respective interests of the Debtor, the Company and the other individual

defendants LSKS is representing with respect to the Pending Actions. As set forth in the Berlin

Declaration, in all cases in which LSKS represents multiple defendants in the same action, it

does so after determining that joint representation has significant advantages, that a proliferation

of separate counsel could be expensive, and that each defendant has a consistent position with

respect to the matter, and after advising each client that if a conflict later arises, the firm would

not be able to continue representing all defendants. LSKS also expressly limits the scope of

representation to exclude any matters between and among multiple clients represented in the

same matter, including, without limitation, claims for indemnification or contribution. As further

set forth in the Berlin Declaration, each of the Pending Actions names the Company and its

agents or employees as defendants arising from the same core of facts, and, in each case, LSKS,

consistent with its obligations under the Rules of Professional Responsibility, has determined

that no conflict exists.

### Basis for Relief

33.    Section 327(e) of the Bankruptcy Code authorizes a debtor in possession to

employ one or more attorneys to represent the debtor on specified matters so long as those

attorneys do not represent or hold any interest adverse to the debtor or to the estate with respect

to the matter on which they are to be employed. *See* 11 U.S.C. § 327(e).

34.    Unlike section 327(a)—which governs the retention of professionals representing

or assisting the trustee in the general conduct of cases under the Bankruptcy Code—section

327(e) does not include a requirement that the professional be "disinterested." Thus, to the

extent LSKS is a creditor of the Debtor and not "disinterested" as that term is defined in the

Bankruptcy Code, the claim for pre-petition fees does not disqualify special counsel under

11

section 327(e) as it would under section 327(a).  *See generally Bank of Brussels Lambert v. Coan*

(*In re AroChem Corp.*), 176 F.3d 610, 622 (2d Cir. 1999); *In re South Shore Gold Club Holding*

*Co., Inc.*, 182 B.R. 94 (Bankr. W.D.N.Y. 1995) ("special counsel need not be disinterested as

that term is defined by section 101(14), but must merely not represent or hold an interest adverse

to the special matter.")  Unpaid pre-petition attorney's fees are not, therefore, a sufficient basis

for disqualifying counsel under section 327(e).  *See*, *e.g.*, *In re EBW Laser, Inc.*, 333 B.R. 351

(Bankr. M.D.N.C. 2005) (special counsel would not be disqualified solely by reason of counsel

holding a prepetition claim); *In re Henlar, Ltd.*, No. 96-2374, 1997 WL 4567, at *1, 3–4 (E.D.

La. Jan. 6, 1997) (holding that special counsel became a creditor of the estate once he signed a

contract to represent the debtor and that status was not sufficient to disqualify special counsel

because there was no conflict of interest in the special matter for which the special counsel was

employed); *DeVlieg–Bullard, Inc. v. Natale (In re DeVlieg, Inc.)*, 174 B.R. 497, 503 (N.D. Ill.

1994) ("[S]ection 327(e) does not require that counsel be a 'disinterested person,' as section

327(a) does, permitting counsel to have claims for prior fees."), *appeal dismissed*, 56 F.3d 32

(7th Cir. 1995).

35.    Instead, "[s]ince the role of special counsel is, by definition, limited, the trustee

need only show that there is no adverse interest related to that role itself."  *See Hogil*

*Pharmaceutical Corp. v. Sapir (In re Innomed Labs, LLC)*, No. 07-cv-4778 (WCC), 2008 WL

276490 (S.D.N.Y. Jan. 29, 2008); *see also AroChem Corp.*, 176 F.3d at 622 ("we should reason

by analogy to 327(e), so that 'where the trustee seeks to appoint counsel only as 'special counsel'

for a specific matter, there need only be no conflict between the trustee and counsel's creditor

client with respect to the specific matter itself.").  As stated above, to the best of the Debtor's

knowledge, and based upon the Berlin Declaration, LSKS does not represent or hold an interest

adverse to the Debtor or his estate with regard to the matters on which LSKS is to be engaged.

Further, LSKS's representation of non-Debtor defendants in certain of the Pending Actions does

not give rise to an adverse interest on the matters for which LSKS is to be engaged.  As set forth

in the Berlin Declaration, LSKS has concluded, consistent with its obligations under the Rules of

Professional Responsibility, that the interests of the Debtor and the non-Debtor defendants are

aligned, and are unlikely to diverge.

36.     Moreover, Bankruptcy Rule 2014 and Local Rule 2014-1 require that an

application for retention include "specific facts showing the necessity for the employment, the

name of the [firm] to be employed, the reasons for the selection, the professional services to be

rendered, any proposed arrangement for compensation, and, to the best of the applicant's

knowledge, all of the [firm's] connections with the debtor, creditors, any other party in interest,

their respective attorneys and accountants, the United States trustee, or any person employed in

the office of the United States trustee."  Fed. R. Bankr. P. 2014.  The Debtor respectfully submits

that this Application and the Berlin Declaration set forth the information required under

Bankruptcy Rule 2014 and Local Rule 2014-1.

37.     Finally, the Debtor requests that LSKS's retention be approved effective *nunc pro

tunc* to the Petition Date.  Such relief is warranted by the circumstances presented by this

Chapter 11 Case and the matters for which LSKS is to be engaged and for which they have

continued to provide Services to the Debtor since the commencement of the Chapter 11 Case.

Since the Petition Date, LSKS has prepared and filed suggestions of bankruptcy in each of the

pending litigations and advised and consulted with the Debtor's insolvency counsel about those

litigations.  In addition, in connection with the Bollea Litigation and the other Pending Actions,

LSKS has engaged in work on behalf of Gawker Media and the individual defendants, including

13

Debtor, that benefits all defendants, including preparing for the ongoing defense of those cases if and/or when the bankruptcy stays in each of them are lifted, or if the matters are otherwise to be addressed in the bankruptcy court.

38.     For the reasons set forth in this Application and the Berlin Declaration, the Debtor submits that LSKS's retention and employment satisfies section 327(e) and this Application should be approved.  If the Debtor were required to retain counsel other than LSKS, the Debtor, his estate, and parties in interest would be prejudiced, as the Debtor would lose LSKS's invaluable experience and knowledge in respect to, *inter alia*, the Pending Actions described above.  Accordingly, it is in the best interests of the Debtor and his estate to retain LSKS.

## Waiver of Stay

39.     The Debtor also requests that the Court waive the stay imposed by Bankruptcy Rule 6004(h), which provides that "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the Court orders otherwise."  Fed. R. Bankr. P. 6004(h).  As described above, the relief that the Debtor seeks in this Application is necessary for the Debtor to protect his interests in pending litigation and to preserve value for his estate.  Accordingly, the Debtor respectfully requests that the Court waive the fourteen-day stay imposed by Bankruptcy Rule 6004(h), as the need for the relief sought herein justifies immediate relief.

## Notice

40.     Notice of this Application has been provided to (i) the U.S. Trustee; (ii) the Debtor's twenty (20) largest unsecured creditors (including counsel if known); (iii) JP Morgan Chase Bank, N.A., the Debtor's only secured creditor; (iv) any party that has filed a notice of appearance in this case; and (v) any such other party entitled to notice pursuant Bankruptcy Rule

55451/0001-13547639v2

2002 and Local Bankruptcy Rule 9013-1(b). The Debtor respectfully submits that such notice is sufficient and no other or further notice need be provided.

WHEREFORE, the Debtor respectfully requests that this Court enter the Proposed Order substantially in the form attached as **Exhibit A**, (a) authorizing the Debtor to retain LSKS as special litigation counsel to the Debtor, effective *nunc pro tunc* to the Petition Date, for the purposes and upon the terms set forth herein; and (b) granting to the Debtor such other and further relief as may be just or proper.

Respectfully submitted,

NICHOLAS G. A. DENTON

By:_____

Dated: October 4, 2016

55451/0001-13547639v2