Hearing Date: **March 22, 2017 at 10:00 a.m. (ET)**
Objection Deadline: **March 15, 2017 at 4:00 p.m. (ET)**

**COLE SCHOTZ P.C.**
Ilana Volkov, Esq.
Mark Tsukerman, Esq.
1325 Avenue of the Americas, 19th Floor
New York, New York 10019
Telephone: (212) 752-8000
Facsimile: (212) 752-8393

*Counsel for Debtor and Debtor in Possession*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

-----------------------------------------------------------x
:
In re: : Chapter 11
:
NICHOLAS G. A. DENTON, : Case No. 16-12239 (SMB)
:
Debtor.[1] :
:
-----------------------------------------------------------x

# DEBTOR'S MOTION TO VOLUNTARILY DISMISS CHAPTER 11 CASE

Nicholas Denton (the "**Debtor**"), the debtor and debtor in possession in the above-captioned chapter 11 case (the "**Chapter 11 Case**"), files this motion (the "**Motion**") for an order, substantially in the form attached as **Exhibit A** (the "**Proposed Order**"), pursuant to sections 105(a) and 1112(b) of title 11 of the United States Code (the "**Bankruptcy Code**") and Rule 1017(a) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") voluntarily dismissing the Chapter 11 Case. In support of the Motion, the Debtor submits the Declaration of Nicholas Denton (the "**Denton Declaration**"), attached as **Exhibit B**. In further support of the Motion, the Debtor respectfully represents as follows:

---

[1] The last four digits of the Debtor's social security number are 1234.

## JURISDICTION AND VENUE

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157. Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief requested are Bankruptcy Code sections 105(a) and 1112(b) and Bankruptcy Rule 1017(a).

## BACKGROUND

2. On August 1, 2016 (the "**Petition Date**"), the Debtor commenced the Chapter 11 Case by filing a petition for relief under chapter 11 of the Bankruptcy Code. The Debtor continues to manage his assets and affairs as a debtor in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code. To date, no creditors' committee has been appointed in the Debtor's chapter 11 case by the Office of the United States Trustee for the Southern District of New York (the "**U.S. Trustee**"), nor has a trustee or examiner been appointed.

3. The Debtor is the founder and former CEO of Gawker Media Group, Inc. ("**GMGI**") and Gawker Media, LLC ("**Gawker Media**"), an online media company. GMGI is the parent company of Gawker Media and Gawker Hungary, Kft. ("**Gawker Hungary**, and together with Gawker Media and GMGI, the "**Company**" or the "**Gawker Entities**"). The Debtor holds approximately 29.52% of the shares in GMGI on a fully diluted basis, comprised of (a) 40,009,140 of Series A preferred shares of GMGI, (b) 249,480 Series A preferred share options, (c) 4,445,460 of common shares in GMGI, and (d) 319,980 common share options.

4. A summary of the Debtor's assets and liabilities, and the circumstances leading to the filing of his chapter 11 case, is set forth in the *Declaration of Nicholas G.A. Denton Pursuant to Local Bankruptcy Rule 1007-2* [Docket No. 11] (the "**First Day Declaration**").

### A. The Circumstances of the Debtor's Chapter 11 Filing

5.      As the Court is aware, and as more fully set forth in the First Day Declaration, the Debtor was forced to commence the Chapter 11 Case, and the Gawker Entities also were forced to commence chapter 11 cases pending before this Court (the "**Gawker Chapter 11 Cases**"), as a result of a judgment in excess of $100 million that was issued against the Debtor, Gawker Media, and A.J. Daulerio (the "**Bollea Lawsuit Defendants**"). The judgment against the Bollea Lawsuit Defendants arose out of the action commenced by Terry Gene Bollea ("**Bollea**"), professionally known as "Hulk Hogan," in the Sixth Circuit Court in and for Pinellas County, Florida, under the caption, *Bollea v. Gawker Media, LLC, et al.*, No. 12012447-CI-011 (Fla. 6th Jud. Cir. Pinellas Cty.) (the "**Bollea Lawsuit**").

6.      More specifically, a jury verdict following a trial in the Bollea Lawsuit held the Debtor jointly and severally liable with Gawker Media and A.J. Daulerio with respect to $115 million in compensatory damages (the "**Bollea Compensatory Damages Judgment**") and separately liable with respect to $10 million in punitive damages (the "**Bollea Punitive Damages Judgment**," and together with the Bollea Compensatory Damages Judgment, the "**Bollea Judgment**"). An additional $15 million in punitive damages was assessed against Gawker Media, separately, and an additional $100,000 in punitive damages was assessed against Mr. Daulerio, separately.

7.      On June 7, 2016, the Florida trial court in the Bollea Lawsuit entered final judgment with respect to the jury's award. Thereafter, the Bollea Lawsuit Defendants filed a notice of appeal of the Bollea Judgment (the "**Bollea Appeal**"), and made various attempts to stay Bollea from executing on the Bollea Judgment, including by seeking an injunction in this

3

Court and by seeking a stay pending appeal in the Florida trial and appellate courts. The Debtor ultimately was unsuccessful in those efforts.

8.   With no protection from the execution of the Bollea Judgment, the Debtor was forced to commence the Chapter 11 Case to protect and preserve his assets, including his substantially equity interests in GMGI, pending resolution of the Bollea Appeal.

**B.   Material Post-Petition Events**

**(i)   The Sale of Substantially all the Company's Assets, and Confirmation of the Gawker Entities' Chapter 11 Plan**

9.   As part of the Gawker Chapter 11 Cases, the Gawker Entities sold substantially all their assets (excluding the "Gawker.com" internet domain name and certain related website content) (the "**Gawker Sale**") to UniModa, LLC ("**UniModa**") after conducting a Court-approved auction and sale process. On August 22, 2016, the Bankruptcy Court entered an Order [Case No. 16-11700, Docket No. 214] in the Gawker Chapter 11 Cases approving the sale of substantially all the Company's assets to UniModa. On September 9, 2016, the sale closed. The Gawker Entities received $135 million in cash proceeds from the sale.

10.   On December 11, 2016, the Gawker Entities filed the *Amended Joint Chapter 11 Plan of Liquidation for Gawker Media Group, Inc., Gawker Media LLC, and Gawker Hungary Kft.* [Case No. 16-11700, Docket No. 576] (the "**Gawker Chapter 11 Plan**"), and on December 22, 2016, the Bankruptcy Court entered an Order confirming the Gawker Plan [Case No. 16-11700, Docket No. 638] (the "**Gawker Confirmation Order**"). In March 2017, the Debtor is projected to receive a substantial initial distribution on account of his preferred shares in GMGI under the Gawker Chapter 11 Plan.[2] The Debtor estimates that such initial

---

[2] The Gawker Chapter 11 Plan is, essentially, a "pot plan," which provides for the distribution of the Gawker Entities' assets (including the UniModa sale proceeds) to the holders of allowed claims and interests in and against the Gawker Entities in accordance with their legal and contractual priority.

4

distribution will be in an amount well in excess of the estimated claims against his estate. The Debtor also is expected to receive subsequent distributions following the initial distribution as the Gawker Entities wind down their bankruptcy estates.

### (ii) The Debtor's and the Gawker Entities' Settlements with Bollea

11. In connection with the formulation, negotiation and prosecution of the Gawker Chapter 11 Plan, the Gawker Entities reached a settlement agreement with Bollea (the **Gawker-Bollea Settlement**"). The Gawker-Bollea Settlement was embodied in the Gawker Chapter 11 Plan and was approved by the Court upon entry of the Gawker Confirmation Order.[3] Pursuant to the Gawker-Bollea Settlement, the Company agreed, *inter alia*, to pay Bollea the sum of $31 million in full and complete settlement, release and discharge of Bollea's claims against the Company, as well as any claims asserted by Bollea against third-parties for which the Gawker Entities have or may have indemnification, contribution, or reimbursement obligations. The latter component of the Gawker-Bollea Settlement effected a full release and satisfaction of the Bollea Compensatory Damages Judgment against the Debtor. Bollea's claim against the Debtor based on the Bollea Punitive Damages Judgment, however, was expressly excluded from the purview of the settlement.[4]

12. Following the negotiation of the Gawker-Bollea Settlement, the Debtor and Bollea reached their own settlement agreement (the "**Denton-Bollea Settlement**") which,

---

[3] A copy of the Gawker-Bollea Settlement is attached to the Gawker Chapter 11 Plan as Exhibit C.

[4] Shortly after the Court entered the Gawker Confirmation Order, in December 2016, the Gawker Entities made the $31 million settlement payment to Bollea. On February 7, 2017, Bollea filed a *Satisfaction of Final Judgment as to Compensatory Damages Against All Defendants* in the Bollea Lawsuit, thereby acknowledging full payment and effecting the cancellation and satisfaction of the Bollea Compensatory Damages Judgment. Also on February 7, 2017, Gawker Media and A.J. Daulerio each filed stipulations for the dismissal of the Bollea Appeal in the Florida appellate court.

5

subject to Court approval, provides for, among other things, the full release and satisfaction of the Bollea Punitive Damages Judgment (without cash consideration from the Debtor), the dismissal of the Bollea Appeal, and except as otherwise provided in the Denton-Bollea Settlement, a mutual release of any and all claims as between the Debtor and Bollea.  Pursuant to the Denton-Bollea Settlement, within three business days of this Court's approval of the agreement becoming a final, non-appealable order, Bollea is required to file and record a Satisfaction of the Bollea Punitive Damages Judgment.  Within three business days thereafter, the Debtor is required to file a notice of voluntary dismissal of the Bollea Appeal.  Furthermore, as is relevant to this Motion, subject to the Court's approval of the Bollea Settlement, Bollea has agreed to not oppose the dismissal of the Chapter 11 Case.

13. On February 24, 2017, the Debtor filed a motion to approve the Bollea-Denton Settlement (the "**9019 Motion**"), which is scheduled to be heard by the Court at the same date and time as the hearing on this Motion (March 22, 2017).

### C. The Remaining Claims against the Debtor's Estate

14. Aside from the Bollea Lawsuit, the Debtor was a defendant in three other pending lawsuits as of the Petition Date, namely:  (a) *Huon v. Denton, et al.*, No. 11-cv-03054 (N.D. Ill.) (the "**Huon Lawsuit**"), (b) *Ayyadurai v. Gawker Media LLC, et al.*, No. 16-CV-10853 (D. Mass) (the "**Ayyadurai Lawsuit**"), and (c) *Ashley Terrill v. Gawker Media LLC, et al.*, No. 16-CV-00411 (S.D.N.Y.) (the "**Terrill Lawsuit**").  The plaintiffs in those lawsuits each filed claims in the Chapter 11 Case (the "**Litigation Claims**") which represent, by far, the three largest claims (other than Bollea's), and the only other contingent and unliquidated claims against the Debtor's estate.  In particular, the claims were filed by Meanith Huon (Claim Nos. 3 and 4, asserted in the amount of $100 million each), Dr. Shiva Ayyadurai (Claim No. 8, asserted

6

in the amount of $35 million), and Ashley Terrill (Claim No. 7, asserted in the amount of $10 million).

15. Since the Petition Date, each of the Litigation Claims have been settled and/or fully resolved. Meanith Huon's claims, which were based on the Huon Lawsuit, were disallowed and withdrawn by orders of the Court following his settlement with the Company. [*See* Docket Nos. 126 and 136]. Pursuant to Mr. Huon's settlement agreement with the Company, he moved to dismiss the Huon Lawsuit, and on January 5, 2017, the United States District Court for the Northern District of Illinois entered an Order [Case 11-cv-03054, Docket No. 293] dismissing the Huon Lawsuit as against all the Gawker-affiliated defendants therein, including the Debtor, with prejudice.

16. Similarly, the Company reached settlement agreements with Dr. Ayyadurai and Ms. Terrill, each of which fully resolved their claims against the Debtor. Like the Gawker-Bollea Settlement, the Company's settlements with Dr. Ayyaduari (the "**Ayyadurai Settlement**") and Ms. Terrill (the "**Terrill Settlement**") were embodied in the Gawker Chapter 11 Plan and were approved by the Court upon entry of the Gawker Confirmation Order.[5]

(a) Pursuant to the Ayyadurai Settlement, the Company agreed to pay Ayyadurai $750,000 in full and complete settlement, release and discharge of Ayyadurai's claims against the Company, including, among other things, any claims (including in the Ayyadurai Lawsuit) against any employee, director, officer, manager, or independent contractor of the Gawker Entities, expressly including the Debtor. (*See* Ayyadurai Settlement at ¶ 3 ("The payment of the Settlement Payment shall be in full satisfaction of . . . subject to paragraph 10 only in the case of Biddle and cook, any claims (including claims in the Ayyadurai Action)

---

[5] The Ayyadurai and Terrill Settlements are attached to the Gawker Chapter 11 Plan as Exhibits D and E, respectively.

against any employee, director, officer, manager, or independent contractor of the Gawker Entities (including Denton, Cook and Biddle).").

(b)    Pursuant to the Terrill Settlement, the Company agreed to pay Terrill $500,000 in full and complete settlement, release and discharge of Terrill's claims against the Company, including, among other things, any claims (including in the Terrill Lawsuit) against any employee, director, officer, manager, or independent contractor of the Gawker Entities, expressly including the Debtor. (*See* Terrill Settlement at ¶ 3 ("The payment of the Settlement Payment shall be in full satisfaction of . . . subject to paragraph 11 only in the case of Biddle and cook, any claims (including claims in the Terrill Action) against any employee, director, officer, manager, or independent contractor of the Gawker Entities (including Denton, Cook and Biddle).").[6]

17.    Consequently, as of the filing of this Motion, the remaining prepetition claims against the Debtor and/or his estate, include (a) the secured claim of JPMorgan Chase Bank, N.A. in the approximate amount of $1,676,548.57, and (b) liquidated, but potentially disputed and/or contingent, unsecured claims in the total aggregate amount of approximately $414,801.37.[7] Furthermore, as of January 31, 2017, the Debtor estimates the estate has accrued administrative claims on account of post-petition professional fees in the approximate, aggregate

---

[6] Shortly after the Court entered the Gawker Confirmation Order, in December 2016, the Gawker Entities made the settlement payments to Dr. Ayyadurai and Ms. Terrill in accordance with their respective settlement agreements. Upon the satisfaction of the remaining unsatisfied conditions, if any, of paragraph 6 in the Ayyadurai Settlement and paragraph 7 of the Terrill Settlement, respectively, Ayyadurai and Terrill each will be required to file a notice dismissing, with prejudice, their respective lawsuits.

[7] On October 14, 2016, the Court entered an *Order Establishing Deadline for Filing Proofs of Claim and Approving the Form and Manner of Notice Thereof* [Docket No. 73], establishing November 18, 2016 (ET) (the "**Bar Date**") as the last day for all persons and entities, but not including governmental units, to assert a claim, as defined in Bankruptcy Code section 101(5), against the Debtor which arose on or prior to the filing of the Debtor's chapter 11 petition on the Commencement Date (a "Prepetition Claim"). The last day for governmental units (as that term is defined in Bankruptcy Code section 101(27)) to assert a Prepetition Claim was January 30, 2017 (ET) (the "**Governmental Unit Bar Date**").

8

amount of $322,727.54, and U.S. Trustee fees in the approximate amount of $2,600. The Debtor does not believe there are any administrative claims against the estate, other than professional fees and U.S. Trustee fees. A schedule reflecting the estimated outstanding claims against the Debtor's estate is attached as **Exhibit C**.

## THE DEBTOR'S DETERMINATION TO DISMISS THE CHAPTER 11 CASE

18.  As stated above, the Debtor filed this case to protect and preserve his assets from Bollea's execution of the Bollea Judgment pending the resolution of the Bollea Appeal. The Bollea Lawsuit, Judgment and Appeal, however, are now resolved, as are the other lawsuits that were pending against the Debtor (*to wit*, the Huon, Ayyadurai, and Terrill Lawsuits). Furthermore, since the Petition Date, the Debtor's primary material asset (his shares in GMGI) has been liquidated. Consequently, the Debtor is solvent, with liquid assets substantially in excess of his liabilities. The Chapter 11 Case has, therefore, served its bankruptcy purpose by, *inter alia*, providing the Debtor with breathing space to resolve contingent litigation claims. *See C-TC 9th Ave. P'ship v. Norton Co. (In re C-TC 9th Ave. P'ship)*, 113 F.3d 1304, 1310 (2d Cir. 1997) ("The purpose of Chapter 11 reorganization is to assist financially distressed business enterprises by providing them with breathing space in which to return to a viable state." Internal quotation marks omitted); *see also Baker v. Latham Sparrowbush Assocs. (In re Cohoes Indus. Terminal, Inc.)*, 931 F.2d 222, 227-228 (2d Cir. 1991).

19.  Moreover, having voted in favor of the Gawker Chapter 11 Plan, the Debtor is the beneficiary of the third-party release and injunction provisions provided thereunder, which will serve to protect the Debtor with respect to any claims that may be asserted against him in connection with his work at and for the Gawker Entities and the media

9

content provided by the Gawker Entities.  (*See* Gawker Chapter 11 Plan at §§ 9.02 and 9.05). Those plan provisions address the Debtor's main concern and source of potential liability and/or litigation for which, absent confirmation of the Gawker Chapter 11 Plan's third party release and injunction provisions, he otherwise would have sought the protection and benefits of a chapter 11 discharge in this case.

20. In light of the foregoing material changes to the Debtor's circumstances since the Petition Date, and after consideration and analysis of (a) the anticipated costs associated with preparing and confirming a chapter 11 plan, and the continued prosecution of the Chapter 11 Case to closure; and (b) certain tax considerations in connection with the distributions to the Debtor and the estate under Gawker Chapter 11 Plan, the Debtor has determined to seek the dismissal of the Chapter 11 Case and pay the claims against him and his estate outside of bankruptcy.

21. The Debtor will coordinate with the U.S. Trustee's office to ensure that any fees due to the U.S. Trustee under 28 U.S.C. § 1930 are paid prior to the hearing on this Motion and the dismissal of the case.

## RELIEF REQUESTED

22. By this Motion, the Debtor seeks an order pursuant to Bankruptcy Code sections 105(a) and 1112(b) dismissing his Chapter 11 Case, for cause.

23. As stated above, the Debtor will ensure that any fees owed to the U.S. Trustee under 28 U.S.C. § 1930 will be fully paid and satisfied prior to dismissal of the case. Furthermore, as set forth in the Proposed Order attached as **Exhibit A**, the Debtor proposes that, except with respect to any claims that were settled, compromised or otherwise resolved by prior Order of this Court, any and all claims against the Debtor or his property shall survive the

dismissal of the Chapter 11 Case, and the holders of any such claims against the Debtor or his property (including, without limitation, the claims identified in **Exhibit C**) shall retain and may assert any and all rights and remedies available under applicable law to pursue the collection of such claims.  Likewise, the Debtor shall retain and may assert any and all rights, claims, remedies and defenses available under applicable law with respect to any claims asserted against him or his property (including, without limitation, the claims identified in **Exhibit C**).

## BASIS FOR RELIEF

24. The Debtor respectfully submits that cause exists to dismiss the Chapter 11 Case because the circumstances have materially changed since the Petition Date, such that the intended and stated purpose of the Chapter 11 Case has been accomplished, obviated and/or rendered moot, and the continued prosecution of the Chapter 11 Case has become unnecessary and costly.

25. Section 1112(b) of the Bankruptcy Code provides that, upon request by a "party in interest," a court may dismiss a case "for cause" after notice and a hearing.  A chapter 11 debtor is a party in interest, *see* 11 U.S.C. § 1109(b), and thus, is eligible to seek relief under section 1112(b).  *See In re The Adbrite Corp.*, 290 B.R. 209, 214 (Bankr. S.D.N.Y. 2003).  Furthermore, Bankruptcy Rule 1017 contemplates that a case may be "dismissed upon motion of the petitioner" for "cause" after "a hearing on notice as provided in Rule 2002."  Fed. R. Bankr. P. 1017(a).  Further, section 105(a) of the Bankruptcy Code provides, in relevant part, that, "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."  11 U.S.C. § 105(a).

26. Section 1112(b)(4) contains a list of sixteen examples of "cause."  Case law, however, makes clear that "the list of grounds for converting or dismissing a Chapter 11 case under 1112(b) is illustrative, not exhaustive, and the court may consider other grounds

11

use its equitable powers to reach an appropriate result." *Adbrite*, 290 B.R. at 217 (citing *C-TC 9th Ave P'ship*, 113 F.3d at 1311 (quoting the legislative history)). "Bankruptcy judges have wide discretion to determine whether cause exists to dismiss or convert a case under section 1112(b)." *In re BH S & B Holdings, LLC*, 439 B.R. 342, 346 (Bankr. S.D.N.Y. 2010).

27. Although it is uncommon for a debtor to seek dismissal of its own case, it is by no means unprecedented and, as stated above, is expressly contemplated by Bankruptcy Rule 1017. The case of *In re Forum Health*, 444 B.R. 848 (Bankr. N.D. Ohio 2011), is particularly analogous and worthy of brief discussion. There, eighteen debtors filed separate voluntary chapter 11 petitions. Two of the debtors, which otherwise were solvent, filed because they were jointly and severally obligated with the other debtors regarding certain bonds. *See id.* at 852-53. After they filed, the bond obligations to which they were jointly and severally liable were paid in full from the proceeds of a court-approved sale of certain of their co-debtors' assets. *Id.* Those entities' only other outstanding liability consisted of certain pension liability that was resolved with the Pension Benefit Guaranty Corporation waiving all claims against them, pending court approval. *Id.* Accordingly, the two debtors filed motions to voluntarily dismiss their chapter 11 cases for the "stated cause that circumstances have materially chanced since the filing of their cases," *id.* at 849, such that "the purpose of [the debtors'] chapter 11 cases [had] been fulfilled, [and] there [was] no longer any reasons for their cases to remain pending." *Id.* at 853.

28. The *Forum* debtors' motions to voluntarily dismiss their cases faced opposition from the official committee of unsecured creditors, which apparently sought, among other things, to substantively consolidate the debtors' assets with those of the other petitioners to satisfy creditor claims. *See id.* at 850-51, 853. The bankruptcy court in *Forum* granted the

debtors' motions and dismissed the bankruptcy cases for cause pursuant to section 1112(b) of the Bankruptcy Code. The court explained that "[n]othing in § 1112(b) prohibits a debtor from moving for dismissal of its own case[,]" and indeed, as a "party in interest" it is permitted to do so. *Id.* at 855. Furthermore, the non-exhaustive list of examples of "cause" provided by § 1112(b)(4) are all "based on some kind of failure by a debtor" and, therefore, they are "examples of cause that a party *other than a debtor* would usually cite as grounds for dismissal." *Id.* (emphasis in original). Thus, the fact that neither of the debtors relied on one of those specified examples was "wholly consistent with a debtor's request for dismissal of its own case." *Id.* at 856.

29.     The bankruptcy court in *Forum* concluded that "[t]o the extent a debtor has the resources to pay all of its creditors in full outside the protection of the Bankruptcy Code, continuation of a bankruptcy case does not serve a bankruptcy purpose." *Id.* at 856 (citing cases for proposition that a case may be dismissed for other causes, such as bad faith or if the petition does not serve a bankruptcy purpose). The court held that "[w]here, as here, a debtor no longer requires the protection of the Bankruptcy Code and the Bankruptcy Court, such debtor has established cause for dismissing the bankruptcy case."[8] *Id.*

30.     Other cases in which courts have granted a chapter 11 debtor's motion to voluntarily dismiss its case include, for example, the case of *In re Rose*, 86 B.R. 439 (Bankr.

---

[8] The bankruptcy court in *Forum* also observed:

> There is a dearth of case law on whether the ability to pay creditors outside of bankruptcy constitutes cause for dismissal of a bankruptcy case. The Court, however, does not find the absence of case law on this subject to be unusual because it is a rare chapter 11 debtor that has more than sufficient funds to pay all of its creditors in full. As a consequence, dismissal based on such a successful outcome is uncommon. Moreover, to the extent there are circumstances like the ones currently before the Court . . . , a debtor's motion to dismiss is not likely to be opposed. Thus, there would be little or no case law on the topic. The novelty of the argument, however, does not mean that [the debtors] have failed to establish cause for dismissal of their cases.

*Id.* at 854.

13

E.D. Pa. 1988). There, an individual debtor believed that "he no longer need[ed] whatever benefits he might derive from chapter 11, [was] able to pay all of his creditors outside of bankruptcy and wish[ed] to dismiss his case." *Id.* at 440-41. The court granted the debtor's motion conditioned on the debtor satisfying all U.S. Trustee fees. *See id.* at 442. Similarly, in *In re Markhon Indus., Inc.*, 100 B.R. 432 (Bankr. N.D. Ind. 1989), the debtor sold substantially all its assets shortly after filing its bankruptcy case. It then filed a motion to voluntarily dismiss its case under § 1112(b) because all of its assets were sold, all pending actions were resolved, all administrative claims were fully paid, and there were no assets remaining in the estate to distribute or administer. *Id.* at 433. The U.S. Trustee objected to the dismissal of the case because the debtor had failed to satisfy outstanding quarterly fees. *Id.* at 433. The court overruled the U.S. Trustee's objection and dismissed the case for cause pursuant to Bankruptcy Code section 1112(b). *Id.* at 435. The court expressly distinguished the *Rose* case discussed above, on the fact that in *Rose* "the debtor had assets from which admitted an ability to pay all of his creditors outside of bankruptcy," whereas in *Markhon*, the debtor had proven there were no such assets from which to derive payment to the U.S. Trustee. *Id. See also In re Hall*, 304 F.3d 743 (7th Cir. 2002) (affirming bankruptcy court's dismissal of individual debtor's chapter 11 case at debtor's request).

        31.    For all the reasons discussed above, in this case, like in the *Forum* case, the Debtor's circumstances have materially changed since the Chapter 11 Case was commenced, such that the case has fulfilled its bankruptcy purpose. The Debtor has resolved all the lawsuits that were pending against him, including the Bollea Lawsuit and Judgment which was the impetus for the chapter 11 filing. Following his receipt of the initial distribution under the Chapter 11 Plan, the Debtor will have more than sufficient cash to pay all of his creditors in full

14

outside the protection of the Bankruptcy Code. Therefore, continuation of a bankruptcy case does not serve a bankruptcy purpose and cause exists for its dismissal pursuant to Bankruptcy Code section 1112(b). *See In re C-TC 9th Ave. P'ship*, 113 F.3d 1304, 1310 (2d Cir. 1997) ("[t]he purpose of Chapter 11 reorganization is to assist financially distressed business enterprises by providing them with breathing space in which to return to a viable state. If there is not a potentially viable business in place worthy of protection and rehabilitation, the Chapter 11 effort has lost its *raison d'etre*." (quoting *In re Winshall Settlor's Trust*, 758 F.2d 1136, 1137 (6th Cir. 1985))); *In re Gonic Realty Trust*, 909 F.2d 624, 626 (1st Cir. 1990) (affirming dismissal of chapter 11 case for lack of bankruptcy purpose).

## NO PRIOR REQUEST

32. No previous request for the relief sought herein has been made to this or any other court.

## NOTICE

33. Notice of the Motion will be given to: (a) the U.S. Trustee, (b) the Debtor's secured creditor and all the Debtor's unsecured creditors, (c) any party that has filed a notice of appearance in this case; and (d) any such other party entitled to notice pursuant Bankruptcy Rule 2002 and Local Bankruptcy Rule 9013-1(b). The Debtor submits that no other or further notice is required.

## CONCLUSION

WHEREFORE, for all the foregoing reasons, the Debtor respectfully requests that the Court enter the Proposed Order, substantially in the form attached as **Exhibit A**, granting the relief requested in the Motion and such other relief as the Court deems just and proper under the circumstances.

Dated: New York, New York
February 24, 2017

COLE SCHOTZ P.C.

/s/ *Ilana Volkov*
Ilana Volkov
Mark Tsukerman
1325 Avenue of the Americas, 19th Floor
New York, New York 10019
Telephone: (212) 752-8000
Facsimile: (212) 752-8393

– and –

Warren A. Usatine (admitted *pro hac vice*)
Court Plaza North
25 Main Street
P.O. Box 800
Hackensack, New Jersey 07602-0800
Telephone: (201) 489-3000
Facsimile: (201) 489-1536

*Counsel for Debtor and Debtor in Possession*